# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1954

_____

| | |
|---|---|
| Rosia Woodis, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * Appeal from the United States |
| | * District Court for the Western |
| Westark Community College, | * District of Arkansas. |
| | * |
| Appellee. | * |

_____

Submitted: September 22, 1998
Filed: November 9, 1998

_____

Before HANSEN, BRIGHT and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Appellant-plaintiff Rosia Woodis brings this 42 U.S.C. § 1983 action against Westark Community College ("Westark"). Westark expelled Woodis from its nursing college for violating the college's rules, the Standards of Conduct ("Standards").[1]

---

[1]The Standards established the following to govern the behavior of Westark students:

Westark College assumes that, by the act of registering, the student

Woodis asserts two distinct claims: that the Standards are unconstitutionally vague, and that Westark violated her procedural due process rights. The district court granted judgment as a matter of law in favor of Westark dismissing the entire case and Woodis appealed. We affirm.

## I. BACKGROUND

Ms. Woodis enrolled as a nursing student at Westark to pursue her Licensed Practical Nurse degree ("LPN"). In her third semester in the program, the police arrested Woodis for attempting to obtain a controlled substance with a fraudulent prescription. On October 11, 1996, Dr. Sandi Sanders, then Vice President of Student Affairs, suspended Woodis pending the outcome of the police investigation. Sanders sent a letter to Woodis advising her of this decision and of her due process rights as set

---

agrees to obey all rules and regulations formulated by the College as listed below and to obey all federal, state, and local laws.

Students are expected to conduct themselves in an appropriate manner and conform to standards considered to be in good taste at all times. This implies a consideration for the welfare and reputation of the College and other students enrolled at the College. Students exhibiting behavior problems not compatible with good citizenship can expect to be reprimanded, have certain restrictions imposed, or be denied the privilege to continue as students.

Joint App. at 5.

forth in the Westark Student Handbook.[2]  Woodis appealed the decision to a five-member disciplinary appeals committee, which upheld Woodis' suspension.

On February 24, 1997, Woodis pled nolo contendere to a misdemeanor offense in connection with her criminal conduct.  Shortly thereafter, Sanders notified Woodis by letter that her suspension was permanent.  With the help of legal counsel, Woodis appealed this decision to a second disciplinary action committee and to the President of Westark Joel Stubblefield.  Both independently upheld the expulsion of Woodis.

In a letter dated June 19, 1997, from Sanders to Woodis, Sanders notified Woodis that the school would hold a new hearing to consider her expulsion.  Noting questions raised "concerning procedures used in connection with your due process hearing," Sanders stated that Woodis would have an opportunity to review all the evidence introduced at the hearing, to be accompanied by counsel and to participate at

---

[2]The Student Handbook provided in relevant part:

> To guarantee that the rights of Westark College students will be protected, the following procedure has been developed.

> The disciplinary action to be taken against a student will be determined by the vice president for student services.  If the disciplined student feels the action taken was too severe, he or she may appeal to a five-member Disciplinary Appeals Committee. . . . The committee may uphold, reduce, or reverse the decision of the vice president for student services.

> Both the student and the vice president for student services have the right to appeal the committee's decision to the president [who] may uphold, reduce, or reverse the decision of the vice president for student services and the Disciplinary Appeals Committee.

Jt. App. at 30.

the hearing.  In addition, Sanders explained that the decision of the new disciplinary committee would supersede that of the first committee which had considered her appeal.  On July 16, 1997, the new committee unanimously affirmed the decision to expel Woodis from the Westark nursing program.

Woodis subsequently filed suit.  After the conclusion of discovery, Woodis filed a motion for summary judgment.  The district court denied the motion, granted judgment as a matter of law to Westark and dismissed Woodis' suit.  Woodis timely filed the appeal before this court.  We review de novo a grant of judgment as a matter of law.  See Sip-Top, Inc. v. Ekco Group, Inc., 86 F.3d 827, 830 (8th Cir. 1996).

## II.  DISCUSSION

Woodis brings her claim pursuant to 42 U.S.C. § 1983.[3]  A successful § 1983 plaintiff must demonstrate deprivation of a constitutional right by an individual acting under "color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).  Neither party questions whether Westark acted under color of state law in expelling Woodis.  Rather, the parties dispute whether Westark violated Woodis' constitutionally protected, due process rights.

---

[3]Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

In examining Woodis' § 1983 claim, certain principles particular to the school setting guide our analysis. Although students do not "shed their constitutional rights . . . at the school house gate," Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 506 (1969), the Supreme Court has observed that "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, . . . ." New Jersey v. T.L.O., 469 U.S. 325, 340 (1985). Given the flexibility afforded schools in this area, we must "enter the realm of school discipline with caution," Stephenson v. Davenport Community School Dist., 110 F.3d 1303, 1306 (8th Cir. 1997), and we must exercise "care and restraint" in reviewing Westark's discretionary decision to expel Woodis from the school's nursing program. Epperson v. Arkansas, 393 U.S. 97, 104 (1968).

Turning to the specific arguments presented to this court on appeal, Woodis asserts that the Standards of Conduct are void-for-vagueness, as they do not provide adequate notice to Westark students of the proscribed conduct under the school's rules. In addition, Woodis contends that Westark violated her procedural due process rights by granting the vice president of student affairs too much discretion in determining the appropriate punishments for wayward Westark students. The court addresses these arguments in turn.

### A. Void-for-Vagueness

"The void-for-vagueness doctrine is embodied in the due process clauses of the fifth and fourteenth amendments." D.C. and M.S. v. City of St. Louis, Mo., 795 F.2d 652, 653 (8th Cir. 1986). A vague regulation violates the Constitution in two significant respects. See Stephenson, 110 F.3d at 1308 (citations omitted). Such a regulation or enactment fails, (1) to define the offense with sufficient definiteness that ordinary people can understand prohibited conduct; and (2) to establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner. See Kolender v. Lawson, 461 U.S. 352, 357 (1983). In a facial vagueness challenge, an

enactment reaching a substantial amount of constitutionally protected conduct may withstand constitutional scrutiny only if it incorporates a high level of definiteness. <u>See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 494 (1982); <u>see also</u> <u>Video Software Dealers Ass'n v. Webster</u>, 968 F.2d 684, 689 (8th Cir. 1992) (citation omitted). An enactment imposing criminal sanctions or implicating constitutionally protected rights demands more definiteness than one which regulates the economic behavior of businesses, <u>Hoffman Estates</u>, 455 U.S. at 498-99, or the conduct of students in the school setting. <u>See</u> <u>Bethel Sch. Dist. No. 403 v. Fraser</u>, 478 U.S. 675, 686 (1986) ("Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions.").

In examining a facial challenge, this court must first "determine whether the enactment reaches a substantial amount of constitutionally protected conduct." <u>Hoffman Estates</u>, 455 U.S. at 494. Where the enactment does not reach constitutionally protected conduct, "the overbreadth challenge must fail[,]" <u>id.</u>, and the complainant may succeed in a vagueness challenge "only if the enactment is impermissibly vague in all of its applications." <u>Id.</u> at 495. Pursuing this line of analysis, the Supreme Court cautioned courts to "examine the complainant's conduct before analyzing other hypothetical applications of the law[,]" <u>id.</u>, because "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to . . . others." <u>Id</u>. Therefore, "vagueness challenges that do not involve the First Amendment must be examined in light of the specific facts of the case at hand and not with regard to the statute's facial validity." <u>United States v. Nadi</u>, 996 F.2d 548, 550 (2d Cir. 1993) (citing <u>Chapman v. United States</u>, 500 U.S. 453, 467 (1991)).

Applying these principles to this case, we conclude at the outset that the Standards do not threaten to inhibit the exercise of protected First Amendment rights.

See Hoffman Estates, 455 U.S. at 494. Woodis did not contend in her motion for summary judgment, or in her brief to this court, that First Amendment rights were at issue in this case. In fact, Woodis conceded at oral argument that this case does not implicate First Amendment liberties. Our review of the record supports this conclusion. This case does not involve a challenge to a school disciplinary decision arising from a student's exercise of his or her right to free speech. Compare Fraser, supra, 478 U.S. 675 (upholding the suspension of a student as punishment for giving an obscene speech at a school assembly). Nor does Woodis' conduct qualify as any other type of protected First Amendment expression. See Stephenson, supra, 110 F.3d 1303. The relevant conduct under review here--fraudulent procurement of a controlled substance-- constitutes criminal behavior, without First Amendment protection.

Having determined that this vagueness challenge does not involve First Amendment rights, the court next must discern whether the Standards violate the due process clause as applied to the specific facts of this case. See Hoffman Estates, 455 U.S. at 495, n. 7; Nadi, 996 F.2d at 550. Woodis may only succeed in an "as applied" vagueness challenge by "demonstrat[ing] that the [enactment] is impermissibly vague in all of its applications." Hoffman Estates, 455 U.S. at 497. To withstand a facial challenge, an enactment must define the proscribed behavior with sufficient particularity to provide a person of ordinary intelligence with reasonable notice of prohibited conduct and to encourage non-arbitrary enforcement of the provision. Kolender, 461 U.S. at 357. In an "as applied" analysis, we must determine whether the enactment here, the Standards, were sufficiently precise to notify Woodis that her criminal act constituted unacceptable conduct that could lead to expulsion. Woodis cannot maintain a vagueness claim if we determine that she engaged in conduct clearly proscribed by the Standards. See Hoffman Estates, 455 U.S. at 495.

Woodis focuses her vagueness challenge on the phrases "good taste," "appropriate manner," and "good citizenship," the key terms in the Standards defining acceptable conduct under the Westark school rules. Woodis contends that these

phrases do not provide the Westark students with notice of proscribed behavior. Nor do they limit the discretion of the Westark administrators in making disciplinary decisions, essentially allowing the school administration to engage in ad hoc, discriminatory enforcement of the school rules.

In response, Westark cites Felton v. Fayette School Dist., 875 F.2d 191 (8th Cir. 1989), for the proposition that the phrase "good citizenship" is at least sufficiently precise to place a student on notice that criminal conduct will subject that student to disciplinary action. In Felton, the court rejected a vagueness challenge to a school rule conditioning enrollment in an auto mechanics vocational program on "good citizenship."[4] The Felton court concluded the student's conduct, stealing auto parts, was inconsistent with "good citizenship," and that the school had properly excluded him from the activity.[5] Felton suggests that a standard based on "good citizenship" apprises the "ordinary" student that criminal conduct may result in disciplinary action, especially where, as here, the criminal conduct related to the student's area of study. See Felton, 875 F.2d at 193 (holding that the high school's rule "appears particularly well-founded when applied to a student who seeks readmittance to an off-campus auto mechanics program after having been involved in the theft of auto parts").

---

[4]Because the district court did not address the Felton plaintiff's vagueness challenge, this court considered and rejected the claim only "[t]o the extent this argument has been raised."

[5]The court described the Fayette High School rule as follows:

Felton's categorical statements pinpoint the essence of Fayette's rule: "[t]he facts in this situation are that [Fayette] require[s] good citizenship for [its] vocational programs." This requirement means a student must "be a good citizen in the community and [behave] in a way that brings credit to the school."

Felton, 875 F.2d at 192 (internal citations omitted).

Moreover, in <u>Esteban v. Central Missouri State College</u>, 415 F.2d 1077 (8th Cir 1969), we rejected a vagueness challenge to a school regulation which instructed students "to abide by the rules and regulations of the college as well as all local, state and federal laws." <u>Esteban</u>, 415 F.2d at 1082. Like the regulation in <u>Esteban</u>, the Standards specifically state that "by the act of registering, the student agrees to obey all rules and regulations formulated by the College as listed below *and to obey all federal, state and local laws.*" (Jt. App. at 5) (emphasis added). The Standards provide Westark students with clear and precise direction: criminal conduct is inconsistent with the behavior expected of Westark students. Woodis does not dispute that she pled nolo contendere to a misdemeanor charge, and, therefore, that she violated state law. The record also shows that Westark expelled Woodis for engaging in this criminal conduct.[6] In light of the express provision in the Standards prohibiting criminal conduct by students, we conclude that as applied to Woodis, the Standards gave Woodis notice that her conduct would subject her to discipline and, more importantly, placed meaningful bounds on the enforcement decisions of the Westark

---

[6]In a letter from Mr. Stubblefield to Woodis, upholding the decision to expel her, Stubblefield states:

> After a careful review of the file concerning this matter, I have decided to uphold Ms. Woodis' suspension. Our records show that Ms. Woodis was arrested on October 10, 1996 for obtaining controlled substance by fraud. Westark notified Ms. Woodis on October 11, 1996, that she had been suspended from all courses pending the outcome of police investigations. On February 24, 1997, Ms. Woodis entered a negotiated plea of nolo contendere. The Disciplinary Appeals Committee met in April and reviewed evidence and recommended that the suspension be upheld. In accordance with policy set out in Westark's Student Handbook, we have afforded your client with due process and considered her appeal.

Jt. App. at 37.

administrators.  Therefore, Woodis' void-for-vagueness claim must fail in the context of this case where the facts do not implicate First Amendment rights.

## B.  Procedural Due Process

In her second claim, Woodis contends that Westark did not afford her constitutionally adequate procedural due process.  At the outset, we note that the expulsion proceedings entitled Woodis to some level of due process.  See Goss v. Lopez, 419 U.S. 565 (1975) (holding that a student facing a ten-day scholastic suspension was entitled to due process).  In Jones v. Snead, 431 F.2d 1115, 1117 (8th Cir. 1970), this court set forth a standard for procedural due process in the school setting:

> We have indicated that procedural due process must be afforded a student on the college campus "by way of adequate notice, definite charge, and a hearing with opportunity to present one's own side of the case and with all necessary protective measures."  Esteban, supra, 415 F.2d at 1089. But, also, we have cautioned "that it is not sound to draw any analogy between student discipline and criminal procedure . . . ."

Jones, 431 F.2d at 1117 (citation omitted).  Guided by these principles, we conclude that Westark granted Woodis sufficient procedural due process.  Although Woodis contends that the vice president of student affairs possessed excessive discretion in fashioning disciplinary action for students, the record indicates that the process provided to Woodis sufficiently protected her due process rights:  Woodis appealed Sanders' decision to an independent disciplinary action committee and then to the president of the college; after denying her appeals, the college granted Woodis a second disciplinary hearing:  Woodis had an opportunity to consult with counsel, examine evidence introduced against her and participate in the hearing, and, once again,

the second disciplinary committee upheld her expulsion.  On this record, we reject Woodis' procedural due process claim.

### III.  CONCLUSION

Accordingly, we affirm the district court's judgment of dismissal.

A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-