**Samuel B. ACHMAN, Plaintiff,**

v.

**CHISAGO LAKES INDEP. SCH. DIST. NO. 2144, Andrea Coffey, Karen Watters, and Darrold Williams, Defendants.**

**No. 97 CIV. 2426.**

United States District Court, D. Minnesota.

April 2, 1999.

Douglas Gibbs Sauter, Paul Andrew Kaster, Sauter & Associates, Coon Rapids, MN, for Plaintiff.

Timothy James Pawlenty, Karen A. Janisch, Rider, Bennett, Egan, & Arundel, Minneapolis MN, for Defendants.

## ORDER

ALSOP, Senior District Judge.

This matter comes before the Court on Defendants' motion for summary judgment on all of Plaintiff Samuel B. Achman's claims. For the reasons explained below, the Court will grant Defendants' motion in its entirety and dismiss the action.

## BACKGROUND

During the 1994–95 school year, Achman was a junior at Chisago Lakes High School, a unit of Defendant Chisago Lakes Independent School District No. 2144 (the "District"). That year, Achman engaged in numerous incidents of misconduct. These incidents typically involved the use of inappropriate sexual language, gestures and related conduct. At times, Achman's conduct included threats of violence directed at students and District staff.

Defendant Karen Watters was a paraprofessional at the high school. Her duties included supervising the in-school suspension ("ISS") and behavior rooms where Achman was often sent after his misdeeds. Watters's fourteen-year-old daughter, J.W., was also a student in the District. On January 4, 1995, Achman stated, in front of staff and other students, that he was "going to fuck Mrs. Watters and her daughter." On January 30, 1995, Achman boasted to a staff member that he

and Watters "went to a movie, parking, went into the back seat."

After Achman made these worrisome statements, Watters avoided contact with him. Whenever Achman was brought to the behavior room, Watters would try to find another staff member to replace her, temporarily, as ISS supervisor. Occasionally, when substitutes were unavailable, Watters was forced to supervise Achman herself.

On April 13, 1995, Achman had sexual contact with J.W. at the St. Paul home of Watters's brother. Achman ultimately admitted that he had sex with J.W., that he knew she was fourteen, and that J.W. had told him "no" several times, both while he was removing her clothes and during intercourse. He was later adjudicated delinquent on one count of third degree criminal sexual conduct. *See* MINN. STAT. § 609.344, subd. 1(b).

Defendant Andrea Coffey was an assistant principal at the high school. On Friday, April 21, 1995, Coffey observed Achman approach a group of students in the lunchroom. Although Coffey could not hear their conversation, she saw one female student (not J.W.) leave the table, crying and running to the bathroom. Another staff person in the lunchroom had heard Achman tell the group that he had had sex with the girl, and that the girl was a "wimp" and a "loser" because she "screamed" during sex, mimicking her saying, "take it out, it's too large, take it out."

After this incident, Coffey concluded that Achman was unfairly disrupting the education and emotional well-being of the other students. She decided to give Achman a ten-day suspension. The suspension was to be out-of-school, Defendants contend, because Watters was not comfortable supervising Achman in the ISS room. Coffey asked Achman's special education case manager to provide for homebound services for Achman during the suspension period.[1]

---

1. Achman was identified for special education    services for a learning disability while he was

By the following Tuesday, April 25, Coffey and Watters learned from a school psychologist that J.W. was reporting that Achman had raped her. Coffey called the Chisago County Sheriff's Department to report the incident. The authorities began an investigation that same day, interviewing students and staff both in the school and off school grounds.

At the same time that the sheriffs were conducting their delinquency investigation, Coffey was planning for the scheduled suspension meeting with Achman and his parents, set for Monday, May 1. In addition to herself, Coffey decided that Achman's special education case manager, the school psychologist, an additional special education representative, and Watters should attend the meeting. Coffey contends that she included Watters in the meeting to explain why ISS was not an option for Achman, due to his prior comments about her and J.W.

On May 1, Achman's parents arrived at the school for the meeting. Although Achman was in school that day, his parents did not want him present at the meeting, and he did not attend. While certain facts about what transpired are disputed, all parties agree that the meeting was acrimonious from the start. Coffey wished to tape the meeting but the Achmans refused. The parties discussed Achman's inappropriate sexual behavior in school and detailed some of the various incidents that were cause for concern. Coffey also angered the Achmans when she voiced her concern that Achman was being physically abused at home.

When Mrs. Achman asked why Watters was present at the meeting, Watters replied, "your son raped my daughter." This accusation resulted in even more intense shouting, which ended only when the Achmans got up to leave. Coffey informed the Achmans that their son was suspended, and the Achmans demanded that Sam receive homebound instruction. Coffey claims she had prepared a written suspension notice before the meeting but she did not have an opportunity to give it to the Achmans before they walked out; instead, she mailed the notice to the Achman home.[2]

Although Achman was technically suspended, he nevertheless began receiving homebound educational services immediately after the meeting. Following the suspension term, he could have returned to the school, but his parents instead agreed to keep him on homebound education for the remainder of the 1994–95 school year. The following school year, Achman enrolled in a different school district and graduated on time from that district.

Achman filed a seven-count complaint in state court, and Defendants removed the action to this Court. With discovery complete, Defendants now move for summary judgment on all claims. In his brief opposing summary judgment, Achman has voluntarily agreed to the dismissal of three of the seven counts contained in his complaint: defamation (count two), negligent infliction of emotional distress (count three), and negligent employment and supervision (count four). At the summary judgment hearing, Plaintiff also voluntarily withdrew a tardy cross-motion for summary judgment, and voluntarily agreed to the dismissal of the civil rights claim (count seven) to the extent it alleges a violation of the Individuals with Disabilities in Education Act. 20 U.S.C. § 1400 *et seq.* ("IDEA"). Accordingly, only four claims remain before the Court on Defendant's motion.

For his first remaining claim, Achman alleges a violation of Minnesota's

---

still in grade school. He was later identified as also having an emotional/behavioral disorder.

**2.** Coffey's own post-meeting notes suggest that she did not prepare the suspension notice until after the meeting ended: in the last section of her notes, titled "Actions to be taken by the school," she wrote "[i]ssue ten day suspension notice and give reason for the suspension."

Data Practices Act. MINN. STAT. §§ 13.01–13.99 ("MDPA"). Achman alleges that Defendants Coffey and the District "unlawfully disseminated data" contained in Achman's student records to persons who did not reasonably require access. *See* MINN. STAT. § 13.32 (prohibiting the wrongful dissemination of "educational data"). Achman's principal complaint is that Coffey wrongfully released information to Watters that was contained in Achman's "Behaviors and Incidents Report" (the "Report"). Achman contends that Defendant Darrold Williams, the District Superintendent, is liable under the MDPA because he was the District's "responsible authority" within the meaning of the MDPA.

For his second remaining claim, Achman alleges that Defendants violated Achman's "student rights" by failing to follow the procedures for suspension required by Minnesota's Pupil Fair Dismissal Act. MINN. STAT. §§ 121A.40–121A.56 (formerly codified at MINN. STAT. §§ 127.26–127.39) ("PFDA"). Achman argues that, by not providing him with written notice of suspension "at or before the time the suspension is to take effect," Defendants violated section 121A.46 of the PFDA.

For his third remaining claim, Achman alleges that Defendants violated the Chisago Lakes High School student manual. He claims that the student manual is a "contractual agreement" that provided him with certain enforceable rights, and that Defendants deprived him of those rights. Essentially, Achman asks this Court to extend and apply, to the student/school district relationship, a Minnesota Supreme Court decision that held that a personnel handbook may be treated as part of an employee's contract and construed against the employer. *See Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983).

For his fourth remaining claim, Achman alleges a violation of the federal civil rights statute. *See* 42 U.S.C. § 1983. He con-

tends that all Defendants, acting under color of law, violated his right to procedural due process guaranteed by the Fourteenth Amendment, by "expelling" him with "no notice or opportunity to be heard." Additionally, Achman argues that all Defendants except Watters violated certain of his rights under the Family Education Rights and Privacy Act. See 20 U.S.C. § 1232g(b)(1) ("FERPA"). He argues that his FERPA rights were violated by Defendants' wrongful disclosure of confidential information relating to him.

## DISCUSSION

Summary judgment is appropriate when the record reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Disesa v. St. Louis Community College,* 79 F.3d 92, 94 (8th Cir.1996). But a plaintiff cannot merely rest on the bare fact allegations contained in his complaint; thus, summary judgment is also appropriate when the plaintiff has failed to make a sufficient showing of the existence of an essential element of his case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## I. MDPA Claim

Achman alleges that the District, Coffey and Williams violated the MDPA by disseminating "student recorded data" at the May 1 meeting to persons who did not reasonably require access. Though not specified in his complaint, it appears from his opposition brief that Achman challenges two "releases" of information. First, he alleges that Defendants improperly released Report information to Watters, whose presence at the meeting was unnecessary. Second, he alleges that Defendants improperly released information to Watters that he had been abused by his parents.[3]

---

3. Achman also alludes in his brief to the possibility that one or more of the defendants may have disseminated information about his

behavior more generally, to people within and outside the school, because rumors were spreading regarding the sexual assault. Ach-

The MDPA prohibits the disclosure ·of "educational data." MINN. STAT. § 13.32 subd. 3. The statute defines "educational data" to include "data on individuals maintained by a public educational agency or institution ... which relates to a student." *Id.* § 13.32 subd. 1. Educational data is "private data" and, with certain exceptions, it may only be disseminated to individuals "specifically authorized access to that data." *Id.* § 13.05 subd. 4.[4] Authorized individuals include those with a "legitimate educational interest" in the information. 34 C.F.R. § 99.31(a)(1) (expressly·incorporated into the MDPA by MINN. STAT. § 13.32 subd. 3(e)).

The MDPA authorizes a private cause of action for damages. Under section 13.08, the District or its "responsible authority" may be liable to a person "who suffers any damages as a result of [a MDPA] violation." MINN. STAT. § 13.08 subd. 1.[5] The statute allows a plaintiff to recover "any damages sustained, plus costs and reasonable attorney fees." *Id.* Thus, for Achman to prevail on his MDPA claim, he must prove that the District or its responsible authority disseminated educational data to an individual not authorized access to that data, and that the dissemination caused him damage as a result.

Watters's presence at the May 1 meeting was no doubt imprudent; given Watters's understandable feelings of frustration towards Achman (and possibly his parents), Coffey should have foreseen that her presence there would be counterpro-

ductive. Moreover, her presence was unnecessary, since Coffey or anyone else could have explained to the Achmans "why ISS was not an option for Sam."

But Achman has offered no evidence that Watters was not authorized to access the Report.[6] And there is no evidence that Watters did not have a legitimate educational interest, *generally,* in the information contained in the Report: it strains credulity to suggest that the supervisor of a school's behavior room cannot access a student's behavioral record. Absent evidence that Watters was not authorized to use the information contained in the Report, the Court concludes that there is insufficient evidence, as a matter of law, to support Achman's claim of an MDPA violation.

■ Even if Watters was not authorized access to the Report, Achman has failed to explain or show how any wrongful release of data caused him damage. His assault on J.W. had become the buzz of the school and the town before the May 1 meeting took place. There is no evidence, or even a suggestion, that the buzz was generated by any of the Defendants. So, no additional reputational harm could have resulted from information released at the private meeting between his parents and school officials. Further, there is no evidence that any information released in that meeting was used in the sheriff's delinquency investigation. Since Achman has failed to offer any evidence that he suffered any damage "as a result of" a supposed MDPA

---

man has offered no evidence suggesting that any rumors originated with any of the defendants, and the Court rejects his MDPA claim to the extent it is premised on such speculation.

4. A rule promulgated under the MDPA states that only individuals "whose work assignments reasonably require access" may use or receive private data. MINN. R. 1205.0400 subp. 2. But the statute itself contains no "reasonableness" requirement: if a person or entity is "specifically authorized access" to data, the statute says they may receive it whether they "reasonably require" it or not.

5. Achman has offered no evidence that any of the individual defendants have been specifically designated the "responsible authority" within the meaning of the MDPA. This shortcoming provides an independent ground for dismissal of this claim against the individual defendants. *See* MINN. STAT. § 13.02 subd. 16 (defining the term "responsible authority").

6. The parties dispute whether information contained in the Report was even "data" that was "disseminated" at the meeting; for purposes of this motion the Court will assume it was.

violation, the Court will grant Defendants' motion for summary judgment on the MDPA claim.[7]

## II. PFDA Claim ("Violation of Student Rights")

■ Achman argues that Defendants violated the PFDA by not giving him prior or contemporaneous notice of his suspension. He believes that this violation gives him a right to recover money damages because it was such a "blatant, massive and malignant violation of Minnesota law." Achman exaggerates the severity of the supposed violation.

The relevant section of the PFDA requires that a written notice of suspension be served upon the student at or before the time the suspension is to take effect. MINN. STAT. § 121A.46 subd. 3. It is undisputed that the suspension notice was mailed on the afternoon following the May 1 meeting. A return receipt was signed for that notice on May 4. Thus, any violation of the PFDA's notice requirement was technical and *de minimus*. *See Bystrom v. Fridley High School*, 686 F.Supp. 1387, 1395 & n. 6 (D.Minn.1987), *aff'd*, 855 F.2d 855 (8th Cir.1988) (dismissing PFDA claim where suspension notice was not served on student before suspension, but was mailed to student's parents the same afternoon).

Even if the technical violation was as "malignant" as Achman contends, the PFDA does not authorize a private cause of action for damages. The Court declines to create a new statutory cause of action where one was not expressly provided for by the state legislature. *See Bruegger v.*

*Faribault County Sheriffs' Dep't*, 497 N.W.2d 260, 262 (Minn.1993) (holding that courts should not interpret statutes to create implied private causes of action). The Court will therefore grant Defendants' motion and dismiss the PFDA ("Violation of Student Rights") claim.

## III. Violation of Student Manual Claim

■ Achman argues that Defendants' conduct violated certain rights granted to him under the District's student manual. He argues that the manual gives him a right to due process, privacy and a discrimination-free education. He contends that these rights are contractual and enforceable in court.

The Minnesota Supreme Court has held that employers are legally accountable for certain promises they make in personnel handbooks, provided all the requisite elements of a contract exist. *Pine River*, 333 N.W.2d at 626–27. But no Minnesota court has ever held that a student/school district relationship is contractual in nature. And none of the requisite elements of a contract are present here in any event. Therefore, the Court will grant Defendants' motion and dismiss this claim.

## IV. Section 1983 Claim

Achman alleges a section 1983 claim against all Defendants for a violation of his procedural due process rights under the Fourteenth Amendment. He also alleges a section 1983 claim against all Defendants except Watters for a violation of his rights under FERPA.[8]

---

7. Achman sought and obtained an advisory opinion from the Minnesota Department of Administration ("Department") in this case. That opinion concluded that, *"if* the data disseminated in [Watter's] presence ... were contained in the Report, it appears that [the District] did violate [Achman's] rights, pursuant to Minnesota Statute Section 13.32, by improperly disseminating educational data about [Achman.]" MINNESOTA DEP'T OF ADMIN. ADVISORY OPINION No. 96–061, at 6 (Dec. 18, 1996) (emphasis added). The Court notes that the Department did not decide whether a

dissemination of protected data actually took place. Moreover, the Department did not address the issues of causation and damage. Thus, even giving due deference to the Department's opinion, the Court concludes that Defendants are entitled to summary judgment on the MDPA claim.

8. As noted earlier, Achman agreed at the hearing to voluntarily dismiss his section 1983 claim premised on IDEA.

## A. Section 1983 Claims Against the District

██ For Achman's section 1983 claim against the District to survive summary judgment, he must allege and offer evidence that the District had an official custom or policy that caused a deprivation of a federally protected right. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Additionally, the District cannot be liable under section 1983 for the actions of its employees on a theory of *respondeat superior. Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir.1996). Since Achman has not alleged or offered any evidence that an official District policy or widespread custom runs afoul of his federally protected rights, and since the District cannot be vicariously liable for the actions of the individual defendants, Achman's section 1983 claim against the District must be dismissed.

## B. Section 1983 Claims Against the Individual Defendants

### 1. *Fourteenth Amendment Procedural Due Process*

Achman claims that the Defendants' actions violated his due process rights, "which resulted in the unfair and/or mistaken exclusion of the Plaintiff from the educational process." He further alleges that Defendants "expelled the Plaintiff from school with no notice or opportunity to be heard."

A student facing a short-term suspension (ten days or less) is entitled to minimal due process. *Goss v. Lopez*, 419 U.S. 565, 576, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). As the Eighth Circuit emphasized recently, courts should exercise "care and restraint" in reviewing a school's disciplinary decisions for due process violations:

Although students do not shed their constitutional rights at the schoolhouse gate, the Supreme Court has observed that maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures. Given the flexibility afforded schools in this area, we must enter the realm of school discipline with caution. *Woodis v. Westark Community College*, 160 F.3d 435, 438 (8th Cir.1998) (citations and quotations omitted) (affirming the grant of judgment as a matter of law to school defendant, where plaintiff, a student expelled for violation of school rules, alleged a violation of her procedural due process rights).

The Court concludes that Achman received all the due process to which he was entitled. As an initial matter, Achman's allegation that he was "expelled" is wholly unsupported by the record. There is no question that Achman could have returned to school following the ten-day period, but his parents thought it best for him instead to receive homebound education services, at District expense, for what little time remained in the 1994–95 school year. Achman and his parents then decided to remove him from the District and enroll him elsewhere for his senior year.[9]

Moreover, it is undisputed that Achman was excluded from the May 1 suspension conference by his parents, not the District or any of the individual defendants. An *opportunity* to be heard is all that is required. *Goss*, 419 U.S. at 577–81, 95 S.Ct. 729 (holding that student facing a ten-day suspension is entitled to "an opportunity to present his side of the story"). Achman had that opportunity.

██ Even if the Defendants acted in violation of Achman's procedural due process rights, Achman has made no showing that, by denying him the opportunity to

9. Indeed, it is questionable whether Achman was ever truly suspended; he received homebound instruction even during the suspension period. Moreover, Achman's mother stated in her deposition that she viewed what hap-

pened not as a suspension, but rather a change of placement to homebound instruction. Nevertheless, for purposes of summary judgment, the Court assumes that Achman was suspended.

present his version of the facts, he was prejudiced in any way. Coffey was not suspending Achman based upon the report of a third-party accuser, but rather based on conduct that she personally observed. Thus, even if Achman had denied the conduct, there is little doubt that he still would have been suspended. *See Sykes v. Sweeney,* 638 F.Supp. 274, 279 (E.D.Mo. 1986) (granting summary judgment to school on procedural due process claim where student had "failed to demonstrate substantial prejudice as a result of any of the alleged denials of due process"); *cf. Goss,* 419 U.S. at 584, 95 S.Ct. 729 (recognizing that providing a student with an opportunity to be heard "will add little to the factfinding function where the disciplinarian himself has witnessed the conduct forming the basis for the charge"). Accordingly, Defendants are entitled to summary judgment on the section 1983 claim to the extent it is premised upon a violation of Achman's procedural due process rights.

### 2. *FERPA*

■ The FERPA statute was designed to regulate the release of student records. It provides in relevant part:

No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of educational records (or personally identifiable information contained therein ...) of students without the written consent of their parents to any individual, agency, or organization, other than to ... other school officials, including teachers within the educational institution or local educational agency, who have been determined by such agency or institution to have legitimate educational interests, including the education interests of the child for whom consent would otherwise be required
....

20 U.S.C. § 1232g(b)(1). FERPA authorizes the Secretary of Education to "take appropriate action to enforce" its provisions, but the statute itself does not expressly authorize a private cause of action, nor does one arise "by inference." *Girardier v. Webster College,* 563 F.2d 1267, 1276–77 (8th Cir.1977).

If Achman had brought a private cause of action under FERPA, *Girardier* would end the Court's inquiry. But instead, he has asserted the alleged FERPA violation as the basis for a claim under section 1983. He argues that Defendants, acting under color of law, "violated FERPA and the Plaintiff's rights granted to him by FERPA by the disclosure of confidential information pertaining to the Plaintiff."

The Eighth Circuit has not addressed whether a party may bring a section 1983 action premised upon an alleged FERPA violation. The Second Circuit has held that section 1983 does afford a remedy for a FERPA violation. *Fay v. South Colonie Cent. Sch. Dist.,* 802 F.2d 21, 33 (2d Cir. 1986) ("Congress did not create so comprehensive a system of enforcing the [FERPA] statute as to demonstrate an intention to preclude a remedy under section 1983."). The Fifth Circuit has reached the same conclusion. *Tarka v. Cunningham,* 917 F.2d 890, 891 (5th Cir.1990) (citing *Tarka v. Franklin,* 891 F.2d 102, 104–05 (5th Cir.1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 940 (1990)).

Neither the *Fay* nor *Tarka* panels had the benefit of the Supreme Court's recent guidance on the ability of a claimant to bring a section 1983 claim premised on the violation of a federal statute. In *Blessing v. Freestone,* the Court stated that a plaintiff seeking redress through section 1983 "must assert the violation of a federal right, not merely a violation of federal law." 520 U.S. 329, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997). To determine "whether a particular statutory provision gives rise to a federal right," a court must examine three factors:

First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must

demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms.

*Id.* (citations omitted). Once a plaintiff establishes that a statute gives rise to a federal right, there is a "rebuttable presumption that the right is enforceable under section 1983." *Id.* at 1360. That presumption can be overcome by a showing that Congress "specifically foreclosed a remedy under section 1983," either "expressly, by forbidding recourse to section 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under section 1983." *Id.*[10]

Applying the three-factor test, the Court concludes that the FERPA provision at issue here gives rise to a federal right. First, the statute is intended to benefit student and parent privacy interests, by ensuring that school districts have a policy or practice of not releasing educational records without parental consent. *See Bauer v. Kincaid,* 759 F.Supp. 575, 591 (W.D.Mo.1991) (reviewing legislative history and concluding that "FERPA seeks to deter schools from indiscriminately releasing student educational records"). Second, the right is not so "vague and amorphous" that the Court cannot enforce it: courts routinely are asked to review the policies and practices of government agencies to see if they pass statutory muster. Finally, the FERPA provision is not couched in precatory terms: if a state educational institution does not require parental consent before it releases records, "*no funds shall* be made available under *any* applicable [federal educational] program." 20 U.S.C. § 1232g(b)(1) (emphasis added).

The Court further concludes that Congress did not "specifically foreclose" a remedy under section 1983 premised on the FERPA statute at issue here. *Blessing,* 117 S.Ct. at 1360. The statute does not expressly preclude a section 1983 claim. Moreover, the statute does not contain a comprehensive enforcement scheme such that individual enforcement under section 1983 would be inconsistent with that scheme. *Id.* at 1362–63. The Supreme Court has only twice held a statute's remedial scheme to be sufficiently comprehensive to supplant section 1983. *Id.* (citing *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 13, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), and *Smith v. Robinson,* 468 U.S. 992, 1009, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)). In both those instances, the statutes at issue contained elaborate enforcement provisions, providing for noncompliance orders, local administrative procedures, civil suits and criminal penalties. *Id.* The enforcement mechanism for FERPA is far more limited: it simply states that the Secretary of Education "shall take appropriate actions to enforce this section and to deal with violations of this section...." 20 U.S.C. § 1232g(f). The Court concludes that FERPA's "administrative enforcement arsenal [does]

---

**10.** In one case decided before *Blessing,* the Supreme Court appeared to articulate a more rigorous standard for determining whether a federal statute could be privately enforced via section 1983. *Suter v. Artist M.,* 503 U.S. 347, 357, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). In *Suter,* the Court stated that the proper inquiry was whether Congress, in enacting the statute alleged to be violated, "unambiguously confer[red]" upon the statute's intended beneficiaries "a right to enforce" the statute's requirements. *Id.* at 357, 112 S.Ct. 1360.

Although the *Suter* Court insisted that its holding "impose[d] no new 'prerequisites'" on the test it had enumerated in earlier decisions, *id.* at 358 n. 8, 112 S.Ct. 1360, the requirement that a statute "unambiguously confer" a "right to enforce" is unquestionably a more difficult test for a section 1983 plaintiff to meet. To the extent *Suter* is inconsistent with the Supreme Court's instruction in *Blessing,* this Court will following the more recent guidepost.

not compare to those in *Sea Clammers* and *Smith.*" *Blessing,* 117 S.Ct. at 1363.

In sum, the Court concludes that FERPA section 1232g(b)(1) creates a federal right that is enforceable through section 1983 actions. The right ensures that school districts have a policy or practice of not releasing educational records without parental consent—subject, of course, to the statute's enumerated exceptions. However, the Court nonetheless concludes that Achman has failed to state a FERPA-based section 1983 claim that can withstand summary judgment.

■ Achman does not allege that the District "has a policy or practice of permitting the release of educational records . . . of students without the written consent of their parents." *See* 20 U.S.C. § 1232g(b)(1). Nor has he offered any evidence that such a policy or practice exists. Instead, he merely claims that, in this one instance, the District released educational records without his parents' consent. Even assuming the District violated FERPA's mandate in this case, a solitary violation is insufficient to support a finding that the District has violated FERPA as a matter of policy or practice. *See Gundlach v. Reinstein,* 924 F.Supp. 684, 692 (E.D.Pa.1996) (denying leave to amend complaint in FERPA-based section 1983 action absent allegation that defendant had a policy or practice that violated FERPA, and noting that "FERPA was adopted to address systematic, not individual, violations of students' privacy and confidentiality rights"), *aff'd,* 114 F.3d 1172 (3rd Cir. 1997); *accord Maynard v. Greater Hoyt Sch. Dist.,* 876 F.Supp. 1104, 1108 (D.S.D. 1995) (granting defendants' summary judgment motion on FERPA-based section 1983 claim where alleged release was an "isolated incident, not a policy or practice," and holding that "[t]he release of personally identifiable information to third parties without . . . parents' consent is . . . not actionable unless it was done under an official policy or custom of the defendant government body"). Accordingly, Defen-

dants are entitled to summary judgment on the section 1983 claim to the extent it is premised upon an alleged violation of Achman's FERPA rights.

\*    \*    \*    \*    \*    \*

Accordingly, upon the Court's review of the files, motions and proceedings herein, it is hereby ORDERED that:

1. Defendants' motion for summary judgment is GRANTED.

2. The clerk shall enter judgment as follows:

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that Plaintiff's claims against Defendants are dismissed in their entirety.