**Randy EASON, as a parent and natural guardian of Aaron Patrick Eason, Respondents,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 11, Appellant.**

No. C2–99–532.

Court of Appeals of Minnesota.

Aug. 10, 1999.

Jonathan Neal Jasper, Anoka, for respondents.

Kevin Joel Rupp, Minneapolis, for appellant.

Considered and decided by
TOUSSAINT, Chief Judge,
HALBROOKS, Judge, and PARKER,
Judge.

## OPINION

PARKER,* Judge.

Independent School District No. 11, Anoka–Hennepin, appeals the district court's issuance of a temporary injunction restraining it from suspending Aaron Eason, an Anoka High School student. Because the factors governing injunctive relief weigh against granting the injunction, we reverse.

## FACTS

On January 12, 1999, Anoka High School sophomore Aaron Patrick Eason ("Eason") was walking in front of a female student, who began mumbling and cursing under her breath. Eason turned around and told her to "stop talking jive and talk English so I can understand you." The female student responded by striking him across the back of the head. Eason then called her a derogatory term. His exact words were "what are you doing you stupid ho." The female student asked Eason to repeat himself. After he repeated the statement, she slapped him across the face. The following day, Anoka High School principal Craig Rounds suspended her for five days for assaulting Eason.

Principal Rounds met with Eason on January 14, 1999, and questioned him about the incident. After listening to Eason's description of the events, the principal suspended him for five days. Later

that day, Principal Rounds met with both Eason and his father, Randy Eason, who asked Principal Rounds for a written notice of suspension, which he did not receive before he left the meeting.[1] That same afternoon, Randy Eason obtained a temporary restraining order preventing the school from suspending his son. He subsequently filed a complaint seeking a permanent injunction. The complaint challenged Aaron Eason's suspension on two grounds: (1) the school district had not adhered to its own policies in suspending him and (2) the school did not comply with the written notice requirement in the Pupil Fair Dismissal Act.

In February 1999, Randy Eason sought and obtained an order temporarily enjoining Independent School District No. 11, Anoka–Hennepin ("the school district") from suspending Aaron Eason. In granting the temporary injunction, the district court found that Eason was likely to prevail on the merits because the school district did not provide the written notice of suspension required by Pupil Fair Dismissal Act. The school district appeals the district court's grant of the temporary injunction.

## ISSUE

Did the district court err in (1) implicitly determining that the Pupil Fair Dismissal Act provides a private cause of action to challenge suspension decisions and (2) temporarily enjoining a school from suspending one of its students?

## ANALYSIS

A reviewing court will not reverse a district court's decision to grant a temporary injunction absent a clear abuse of discretion. *Carl Bolander & Sons Co. v. City of Minneapolis*, 502 N.W.2d 203, 209

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The parties dispute whether Principal Rounds informed Eason and his father that

Eason was suspended for violating the school's sexual harassment policy, which is only subject to a one-to three-day suspension, or for "verbal abuse."

(Minn.1993). In determining whether injunctive relief is justified, courts must consider five factors: (1) the nature of the relationship between the parties before the dispute; (2) the likelihood that the moving party will prevail on the merits; (3) the moving party's harm if the injunction is denied compared to harm to the nonmoving party if injunction is granted; (4) public policy considerations triggered by the fact situation; and (5) administrative burdens to supervise or enforce the injunction. *Dahlberg Bros., Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965).

## I. Likelihood of Success on the Merits

To succeed on the merits, Eason must have a valid claim under the Pupil Fair Dismissal Act ("PFDA").[2] Statutory interpretation is a question of law subject to de novo review. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). A civil cause of action does not arise from a statute unless the statute expressly or implicitly creates a cause of action. *Flour Exch. Bldg. Corp. v. State*, 524 N.W.2d 496, 498 (Minn.App.1994) (quotation omitted), *review denied* (Minn. Feb. 14, 1995).

The Pupil Fair Dismissal Act, Minn.Stat. §§ 121A.40–.56 (1998), establishes "procedures for the suspension, exclusion, and expulsion of public school pupils." 1974 Minn. Laws ch. 572. The relevant PFDA provision requires that written notice of suspension be served on the student "at or before the time the suspension is to take effect." Minn.Stat. § 121A.46, subd. 3. The PFDA does not, however, contain any *explicit* language creating a cause of action to challenge an alleged violation of the act's suspension provisions. To determine whether a cause of action can be implied from the statute, courts must consider three factors:

(1) whether the plaintiff belongs to the class for whose benefit the statute was enacted; (2) whether the legislature indicated an intent to create or deny a remedy; and (3) whether implying a remedy would be consistent with the underlying purposes of the legislative enactment.

*Flour Exch.*, 524 N.W.2d at 499 (citing *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)).

The structure of the act belies an *implicit* intent to create a cause of action and demonstrates that inclusion of such a remedy was not the legislature's purpose. The PFDA expressly provides for appeal of a school district's exclusion or expulsion decision to the Commissioner of Children, Families and Learning and limited judicial review of that quasi-judicial body's decision. Minn.Stat. §§ 121A.49, .50 (decision of commissioner in exclusion or expulsion appeal subject to judicial review). The statute does not have corresponding provisions for appeal and judicial review of suspension decisions. Even for suspensions greater than five days, the statute requires only that the suspending administrator provide the superintendent with a reason for the longer suspension. The legislature has thus spoken: judicial review under the PFDA is limited to expulsion/exclusion decisions and even then, only after such decisions have been first reviewed by the Commissioner of Children, Families and Learning. It is not the province of this court to create a statutory cause of action not provided for by the legislature. *Stubbs v. North Mem'l Med. Ctr.*, 448 N.W.2d 78, 83 (Minn.App.1989), *review denied* (Minn. Jan. 12, 1990).

Furthermore, because the PFDA does not express any consequences for failure to comply with the suspension provisions, the portion of the act dealing with suspensions is directory, rather than mandatory. *Sullivan v. Credit River Township*, 299 Minn. 170, 176–77, 217 N.W.2d

---

2. Eason provides no legal basis for his other claim that the school district's suspension contravened it own written disciplinary policy.

502, 507 (1974) (statute that does not express consequences of failure to comply with its provisions is directory); *Manco of Fairmont, Inc. v. Town Bd.*, 583 N.W.2d 293, 295 (Minn.App.1998) (statute can contain both directory and mandatory provisions), *review denied* (Minn. Oct. 20, 1998). Although there is a duty to comply with directory provisions of a statute, noncompliance with a directory provision does not invalidate the action. *Sullivan*, 299 Minn. at 177, 217 N.W.2d at 507 & n. 2. Consequently, an implied cause of action for permanent injunctive relief would be inconsistent with the statute's directory suspension provisions.

Our conclusion concurs with *Achman v. Chisago Lakes Indep. Sch. Dist. No. 2144*, 45 F.Supp.2d 664 (D.Minn.1999). In *Achman*, a suspended student alleged that the school district violated the PFDA by not giving him prior or contemporaneous written notice of his suspension. The federal district court found that the PFDA did not authorize a private cause of action for damages and declined to create an implied cause of action. *Id.* at 670. While not binding on this court, *Achman* has significant persuasive effect.

█ We thus conclude that Eason cannot prevail on the merits because a private cause of action for equitable relief does not exist under the PFDA. We need not consider whether Eason would likely succeed on the merits of a section 1983 claim alleging denial of due process because Eason did not make such a claim. We note, however, that the due process Eason received comports with *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).[3] *Goss* held that due process is satisfied when students facing suspensions of ten days or less are given oral or written notice of the charges against them and the opportunity to provide their side of the story. 419 U.S. at 581, 95 S.Ct. at 740 (noting specifically that "[t]here need be no delay between the time 'notice' is given and the time of the [informal] hearing").[4] Eason had an informal hearing with the school principal, at which time the principal gave him the opportunity to explain his version of the facts and notified him that he was suspended for his misconduct.

## II. Parties' Relative Harms

█ The party seeking an injunction must establish that the injunction is necessary to prevent irreparable harm. *Pacific Equip. & Irrigation Inc. v. Toro Co.*, 519 N.W.2d 911, 914 (Minn.App.1994), *review denied* (Minn. Sept. 16, 1994). As a general rule, "[t]he failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction."

---

**3.** *Goss* involved an Ohio statute that, like the PFDA, provided for the appeal of expulsion decisions, but not suspension decisions. 419 U.S. at 567, 95 S.Ct. at 732. The statute merely directed schools to notify suspended students' parents within 24 hours of the suspension. *Id.* The Supreme Court determined that students have, on the basis of state statutes requiring local authorities to provide a free education, legitimate claims of entitlement that are protected by constitutional guarantees of due process. *Id.* at 573, 95 S.Ct. at 735. The Court concluded that even short suspensions implicate the Due Process Clause. *Id.* at 576, 95 S.Ct. at 737.

**4.** We also recognize that failure to provide procedural protections called for by state law or internal school policy does not in itself amount to a denial of constitutional due process. *Giovanni v. Lynn*, 48 F.3d 908, 912 (5th Cir.1995); *Schuler v. University of Minn.*, 788

F.2d 510, 515 (8th Cir.1986). Due process is flexible and the determination of what process is due depends on the particular circumstances and requires consideration of three distinct factors:

(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Brooks v. Commissioner of Pub. Safety*, 584 N.W.2d 15, 19 (Minn.App.1998) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)), *review denied* (Minn. Nov. 24, 1998).

*Morse v. City of Waterville*, 458 N.W.2d 728, 729 (Minn.App.1990) (citations omitted), *review denied* (Minn. Sept. 28, 1990).

■■■ Eason claims that a five-day suspension from school and the resultant exclusion from school athletic events cause him irreparable harm. A five-day suspension from school does not, in itself, establish irreparable injury. The statute itself provides that upon readmission after a suspension, a school may provide alternative educational services, such as special tutoring, a modified curriculum, homebound instruction, or supervised homework. Minn.Stat. § 121A.41, subds. 10, 11. Eason has also failed to establish how his lack of participation in school athletic activities causes him irreparable injury. *See Peterson v. Independent Sch. Dist. No. 811*, 999 F.Supp. 665, 674 (D.Minn.1998) (no property or liberty interest in a student's participation in extracurricular activities); *Thompson v. Barnes*, 294 Minn. 528, 200 N.W.2d 921, 926 (1972) (no irreparable harm when student did not establish how denial of participation in League-sponsored athletic events would cause injury). Hence, this *Dahlberg* factor weighs against the issuance of a temporary injunction.

### III. Public Interest Considerations

■■■ The district court determined that the public interest in non-arbitrary, good faith disciplinary student sanctions favors issuance of the injunction. The school district argues that the public interest is better served by deferring to the disciplinary authority and judgment of the school district. We agree. The statute's conspicuous exclusion of procedures for the appeal of suspension decisions reflects a policy of leaving suspension decisions within the province of the school district. Moreover, judicial intervention in the operation of the public school system requires

restraint. *Stephenson v. Davenport Community Sch. Dist.*, 110 F.3d 1303, 1306 (8th Cir.1997). Schools are afforded flexibility in school disciplinary procedures and courts enter the realm of school discipline with caution. *Woodis v. Westark Community College*, 160 F.3d 435, 438 (8th Cir. 1998). Accordingly, the public interest is best served by judicial non-interference in school suspension decisions.[5]

### IV. Parties' Relationship and Status Quo

The on-going relationship between the parties is that of student and school district. In *Dahlberg*, the parties' long-standing business relationship supported the issuance of a temporary injunction that would prevent the severance of such a relationship and maintain the status quo. *Dahlberg*, 272 Minn. at 276, 137 N.W.2d at 322. In this case, a temporary injunction would disrupt the ordinary relationship between the student and the school, which is afforded appropriate disciplinary powers over the learning environment. Appreciation that a court's perspective is more distant than that of individuals working within the schools is one of the reasons courts are cautious about insinuating themselves into such a relationship. *See Stephenson*, 110 F.3d at 1306.

### V. Administrative Burden in Supervising the Injunction

The district court determined that the temporary injunction would require no court supervision. Nevertheless, as discussed above, judicial intervention into a realm of school authority carries its own burden. The preservation of judicial resources argues against substituting judicial supervision for a school's judgment in suspension cases.

**5.** In keeping with our decision, we do not consider whether the suspension in this case was appropriate, but note that public confidence in the disciplinary authority of schools is bolstered when schools carefully adhere to their own written disciplinary policies if suspending students.

## DECISION

The factors governing injunctive relief conclusively weigh against the issuance of a temporary injunction. The district court abused discretion in granting Eason a temporary injunction.

**Reversed.**