# CITY OF NEW BRIGHTON v.
# METROPOLITAN COUNCIL AND ANOTHER.

237 N. W. 2d 620.

December 26, 1975—No. 45315.

*Perry W. Copeland,* for appellant.

*Lais, Bannigan & Ciresi, Donald L. Lais,* and *Forrest Nowlin,* for respondent.

Heard before Sheran, C. J., and Peterson, Todd, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from a judgment entered pursuant to an order of the Ramsey County District Court in favor of defendant Metropolitan Council. Plaintiff, the city of New Brighton, sought

a declaratory judgment requiring the Metropolitan Council and the Metropolitan Sewer Service Board [1] to acquire New Brighton Sewer Improvement No. 67-8. The district court ordered judgment denying relief, from which the city of New Brighton appeals.

The issues presented are twofold:

(1) Did the Metropolitan Council act within its legal authority in disapproving a request by the city of New Brighton and the recommendations of the Metropolitan Sewer Service Board in refusing to acquire New Brighton Sewer Improvement No. 67-8?

(2) Was the decision of the Metropolitan Council refusing to make such acquisition unreasonable, arbitrary, or capricious?

Between the years 1948 and 1969, the city of New Brighton (hereafter referred to as city) discharged all of its sanitary sewage into a force main owned and operated by the United States of America. One of the conditions of the contract between the two parties was that the city was to provide no sewage service to any lands outside its corporate limits. The only exception to this limitation was an amendment to the contract which permitted the city to supply service to Mounds View High School, built in 1953 and located in the city of Arden Hills. The city of New Brighton received notice in 1965 that its contract for use of the force main was to be terminated. The city, subsequent to that notice, in 1968 constructed a gravity sewer interceptor[2] running northwest through New Brighton and known as Improvement No. 67-8. Simultaneously, the city discontinued use of the

---

[1] The name of the Metropolitan Sewer Service Board subsequently was changed to the Metropolitan Waste Control Commission. L. 1974, c. 422, art. II, § 2. Although the Board was made a party below, the trial court determined that it is an agency of the Council and plaintiff served the notice of appeal only on the Council. We will refer only to the Council as defendant in this opinion.

[2] Sewer lines customarily are classified as lateral, collector, or interceptor lines depending upon size and use.

force main.[3] Improvement No. 67-8 included sufficient capacity to accomodate the flow from a sewer line constructed as part of the improvement in 1963 by the city, that line being intended to include service to an area located east of old Highway No. 8 in the city of Arden Hills. The city of Arden Hills adopted a comprehensive sewer plan which does not serve the area located east of old Highway 8 and west of Interstate Highway 35W. This sewer plan was approved in 1970 by the Metropolitan Council (hereafter referred to as Council) and became part of the Council's comprehensive sewer plan.[4]

Prior to December 31, 1970, the cities of New Brighton and Arden Hills agreed to exchange land through a detachment proceeding. The proceeding, which became effective January 1, 1971, added 93 acres of land in New Brighton located east of Highway 35W to Arden Hills and added 81 acres of land in Arden Hills located west of Highway 35W to New Brighton. After the land exchange, Improvement No. 67-8 served 40 of the 93 acres transferred to Arden Hills.

On December 31, 1970, the Metropolitan Sewer Service Board (hereafter referred to as Board), under the direction of the Metropolitan Council, acquired several municipally owned sewer lines in the Minneapolis-St. Paul metropolitan area. The purpose of this acquisition was to implement the Council's comprehensive sewer plan which had been adopted in January 1970 and was part of the Council's Metropolitan Development Guide.[5] Improvement No. 67-8 was not acquired. The city subsequently

---

[3] The engineering firm of Milner W. Carley & Associates in 1958 prepared a sewer study for the city of New Brighton which recommended the construction of Improvement No. 67-8 and anticipated that the sewer line would serve the westerly portions of the city of Arden Hills.

[4] To aid in the preparation of the comprehensive metropolitan sewer plan in 1970, the consulting firm of Black & Veatch was hired by the Council to identify all sewer lines used by more than one municipality. Each joint-use line later was analyzed by the Council and the Board.

[5] Preparation of the Metropolitan Development Guide is authorized by Minn. St. 473B.06, subd. 5.

served a formal request on the Board on December 28, 1971, asking that Improvement No. 67-8 be acquired. Pursuant to that request, the Board on April 5, 1972, adopted a resolution recommending to the Council that Improvement No. 67-8 be acquired because the Board believed that it was "needed to implement the Council's plan." The Council, beginning in May of 1972, held meetings with officials, consultants, and operating engineers for the city of New Brighton and other municipalities to consider the issue. The Council's referral committee also held hearings on the matter and received evidence from the engineers, consultants, and the attorney for the city. On December 8, 1972, the Council's referral committee made a finding and recommended disapproving the acquisition of Improvement No. 67-8, stating that the New Brighton line was serving less than 75 acres outside the city on December 31, 1970.

Prior to its action in acquiring the municipally owned sewer lines, the Council on November 25, 1970, adopted criteria to be used in determining which sewer lines should be acquired to implement the Council's comprehensive sewer plan. On December 14, 1972, the Council adopted the findings of the referral committee, found that Improvement No. 67-8 was not needed to implement the comprehensive metropolitan sewer plan, and disapproved the recommendation of the Board of April 5, 1972.

The Council is a political subdivision of the state and is charged by the legislature with responsibility for the orderly development of the Minneapolis-St. Paul metropolitan region.[6] As part of its responsibilities, the Council has authority to develop and implement a comprehensive metropolitan sewer plan.[7]

---

[6] Minn. St. 473B.06, subd. 5.

[7] Minn. St. 473C.15, subd. 1. For a discussion of the importance of sewer planning to the region's orderly development see Freilich & Ragsdale, *Timing and Sequential Controls—The Essential Basis for Effective Regional Planning: An Analysis of the New Directions for Land Use Control in the Minneapolis-St. Paul Metropolitan Region,* 58 Minn. L. Rev. 1009, 1019-21.

Under Minn. St. 473C.05, subd. 1, the Board is given authority to acquire "all existing interceptors and treatment works which will be *needed* to implement the Council's comprehensive plan * * *" (Italics supplied).

The term "interceptor" is defined in Minn. St. 473C.02, subd. 11, as "any sewer * * * which is designed or used to conduct sewage originating in more than one local government unit, or which is designed or used to conduct all or substantially all of the sewage originating in a single local government unit from a point of collection in that unit to an interceptor or treatment works outside that unit." This statutory section does not indicate which interceptors are needed for implementing the Council's comprehensive plan. That decision is a legislative decision which remains with the Council. The Board has authority to acquire sewer lines only with the approval of the Council.[8]

■ Plaintiff argues that the approval of the Council was given when the Council promulgated a written "Interceptor Definition and Criteria" on November 25, 1970. Defendant aptly points out, however, that the preamble to the "Interceptor Definition and Criteria" clearly indicates that the Council only intended to issue a set of guidelines for future sewer line acquisitions and did not intend these guidelines as rules to control all future acquisition decisions.[9]

Plaintiff also argues that the issuance of "Interceptor Definition and Criteria" constituted a delegation of decision-making authority regarding sewer line acquisition from the Council to the Board. Again, the preamble to the criteria statement makes it clear that no such delegation was intended. Furthermore, defendant correctly counters that this authority legally could not

---

[8] Minn. St. 473C.05, subd. 2.

[9] The preamble to the "Interceptor Definition and Criteria" reads as follows: "The Metropolitan Sewer Law defines an interceptor but separates this from the specification of interceptors to be taken over or constructed by the Sewer Board. The following criteria are proposed to *clarify the situation.*" (Italics supplied.)

be delegated to the Board. The Board acts as agent of the Council and the delegation of authority to make discretionary decisions would be in violation of law much like any attempted delegation of a public board's discretionary authority to its officers as agents. State ex rel. Niemi v. Thomas, 223 Minn. 435, 27 N. W. 2d 155 (1947).

■ Because the decision as to which sewer lines should be acquired is discretionary with the Council, the scope of judicial review of this decision is narrow. The most recent formulation of the extent of judicial review in such matters was contained in Merriam Park Community Council, Inc. v. McDonough, 297 Minn. 285, 290, 210 N. W. 2d 416, 419 (1973), where this court stated:

"With respect to decisions of municipal and other governmental bodies having the duty of making decisions involving judgment and discretion, this court has repeatedly said that it is not the province of the trial court to substitute its judgment for that of the body making the decision, but merely to determine whether that body was within its jurisdiction, was not mistaken as to the applicable law, and did not act arbitrarily, oppressively, or unreasonably, and to determine whether the evidence could reasonably support or justify the determination."

The burden of proof in this matter is on the plaintiff to demonstrate that there was no reasonable basis for the Council's action. Hartle v. City of Glencoe, 303 Minn. 262, 226 N. W. 2d 914 (1975); Village of Edina v. Joseph, 264 Minn. 84, 119 N. W. 2d 809 (1962); Qvale v. City of Willmar, 223 Minn. 51, 25 N. W. 2d 699 (1946); 13A Dunnell, Dig. (3 ed.) § 6878. The trial court found that the Council acted reasonably in refusing to acquire Improvement No. 67-8. Plaintiff contends that this sewer line is an interceptor within the statutory definition and that there is sufficient evidence that the line is needed to implement the Council's comprehensive sewer plan. Plaintiff argues that the

only language in the Council's "Interceptor Definition and Criteria" which would exclude Improvement No. 67-8 from acquisition is:

"A pipe (or segment thereof) used primarily as a lateral or collector sewer serving an area not exceeding 75 acres in a local government unit outside the one in which it is located."

Plaintiff contends that Improvement No. 67-8 is not a lateral or collector, but rather is an interceptor sewer. Plaintiff further contends that the Council was in error in concluding that this line serves less than 75 acres outside the city of New Brighton. In making its determination, however, the Council considered several factors in addition to the promulgated criteria. These factors included the need, use, cost, and service to be provided by the proposed acquired line. While the evidence submitted by plaintiff may support plaintiff's definitions of the terms "interceptor" and "serving," the Council has discretion in this matter to make its own decision regarding acquisition so long as that decision is not arbitrary. The Council has primary responsibility for providing comprehensive metropolitan sewer service. The trial court found that there was sufficient evidence to justify the Council's decision. The court's findings of fact will not be set aside unless clearly erroneous. Rule 52.01, Rules of Civil Procedure.

It is undisputed that on December 31, 1970, the date of the Council's decision to acquire several municipally owned sewer lines, the only site outside of the city of New Brighton which Improvement No. 67-8 was connected to and actually served was Mounds View High School. The Council determined that, of the 54 acres on which the high school was located, only 40 acres actually were being served by the improvement. The fact that Improvement No. 67-8 might have been designed to serve an area beyond the city of New Brighton is not determinative. The question is whether the Council could reasonably find that Improvement No. 67-8 was not needed to implement its comprehensive sewer plan.

Plaintiff's cited cases are not in point since the decision here was not an administrative decision subject to established procedural rules, but rather a legislative decision within the Council's discretion. Plaintiff cites three cases as authority for the contention that the "Interceptor Definition and Criteria" were rules controlling Council discretion. State ex rel. Coduti v. Hauser, 219 Minn. 297, 17 N. W. 2d 504 (1945), involved a decision by the Minneapolis Civil Service Commission regarding restoration of an employee after a leave of absence. The court noted in that case that the duty of the commission to reinstate the employee was positive and not discretionary. Similarly, in Ostrand v. Village of North St. Paul, 275 Minn. 440, 147 N. W. 2d 571 (1966), the court noted that the decision of the village of North St. Paul to deny a special permit to construct an apartment building was not a discretionary decision. In Griswold v. County of Ramsey, 242 Minn. 529, 65 N. W. 2d 647 (1954), the court held that a board of county commissioners was required to continue using a competitive bidding method for public construction projects once that method had been adopted. All three cases involved administrative decisions, rather than legislative decisions which would have been discretionary with the governing body. It is the nature of the decision, not the promulgation of criteria, that determines the permissible ambit of a governing body's decision-making authority. None of the authorities cited by plaintiff establishes the proposition that any criteria promulgated by a governing board constitute rules which strictly bind future board decisions. Because the statutory authority allows the acquisition of only those sewer lines needed for the comprehensive metropolitan plan, it is fundamental that the Council must base its decision on a wide range of factors. The decision in this case is analogous to decisions regarding changes in school district boundaries, Farrell v. County of Sibley, 135 Minn. 439, 161 N. W. 152 (1917), or the apportionment of taxes and assessments, Village of Edina v. Joseph, *supra.*

Since the acquisition decision is discretionary with the Coun-

cil, there must be a determination by the Council that the facilities are needed for the metropolitan sewer system. Pursuant to the request of the Sewer Board, the Council, through its referral committee, conducted a series of meetings with officials of the city and received a substantial amount of evidence on the question of what service was provided by Improvement No. 67-8. The trial court found that the hearings by the referral committee and by the Council itself were "extensively thorough and reasonable." Since the "Interceptor Definition and Criteria" did not constitute a rule which was binding on the Council, the Council had authority to refuse to acquire Improvement No. 67-8.

We therefore affirm the trial court's findings that the Metropolitan Council acted within its legal authority and that its refusal to acquire the plaintiff's Sewer Improvement No. 67-8 was reasonable and not arbitrary or capricious.

Affirmed.