FLOUR EXCHANGE BUILDING CORP.,
f/k/a Summit Mortgage Corp.,
Respondent,

v.

STATE of Minnesota, et al., Appellants.

FLOUR EXCHANGE BUILDING CORP.,
f/k/a Summit Mortgage Corp.,
Respondent,

v.

STATE of Minnesota, et al., Petitioners.

Nos. C0–94–1191, C2–94–1192.

Court of Appeals of Minnesota.

Dec. 6, 1994.

Review Denied Feb. 14, 1995.

Alan L. Kildow, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Tammy L. Pust, Janette K. Brimmer, Asst. Attys. Gen., St. Paul, for appellants.

Considered and decided by HUSPENI, P.J., and FORSBERG and DAVIES, JJ.

## OPINION

HUSPENI, Judge.

The Flour Exchange Building Corporation (FEBC) commenced this action against the State of Minnesota and Dana Badgerow in her capacity as the Commissioner of the Department of Administration (the State), alleging that the State was required to continue leasing space in the Flour Exchange Building (the Building), pursuant to Minn. Stat. § 16B.24, subd. 6(c) (1992) which grants a leasing preference to historically significant buildings and that it violated the statute by leasing space elsewhere.

The trial court denied the State's motion for summary judgment. The State alleged that (1) it was entitled to both discretionary function immunity and official immunity; (2) the public duty doctrine barred the action; (3) FEBC lacked standing; (4) the doctrine of laches barred the action; and (5) Minn. Stat. § 16B.24, subd. 6(c) creates no private cause of action. Because we conclude that Minn.Stat. § 16B.24, subd. 6(c) (1992) does not create a private cause of action, we reverse.

## FACTS

The Building, owned by FEBC, is located in downtown Minneapolis and has been designated as historically significant. Beginning in 1982, the Office of Administrative Hearings (OAH), through the Department of Administration, began to lease space in the Building. The parties renewed the lease in 1987 to extend through December 1991. Early in 1991, the State began negotiating with FEBC in anticipation of the expiration of the lease. At the same time, the State also obtained lease proposals for other buildings.

FEBC proposed a lease renewal rate for space in the Building at $11–$12 per square foot over a five-year period. The State obtained an identical rate for space in a building identified as 100 Washington Square. FEBC then reduced its lease proposal to $7.91 per square foot over a three-year period. In addition, FEBC offered a two-year extension at a rate of $8.41 per square foot and $8.91 per square foot, respectively. Based on these rate figures for the five-year period, the FEBC proposal would have cost the State $407,448.25 less than the 100 Washington Square proposal.

The State asked FEBC to extend its lease until the end of March 1992, after which the OAH would move to a different site. As its primary reason, the State cited the anticipated noise from the construction of the new federal courthouse, which was to begin in the fall of 1993. In response, FEBC offered to seal the interior and exterior windows of the OAH space to abate the construction noise and to have a laboratory conduct tests to determine how much soundproofing would be necessary to keep the noise down.

The State did not accept FEBC's proposals. By letter on August 21, 1991, and in a meeting in December 1991, the State informed FEBC that it was going to move out of the Building and into 100 Washington Square at the expiration of the Building lease. The parties agreed to extend the lease through June 1992, at which time the OAH moved out.

By affidavit, Deil Gustafson, president of FEBC, stated that the OAH had previously indicated it was very satisfied with the premises and the services at the Building. Gustafson also stated that when he asked Dennis Spalla, Assistant Commissioner of the Department of Administration, in December 1991, why the State was moving out, Spalla cited possible political motives as reasons for the move. Thomas McNamee, vice president of FEBC, stated by affidavit that he was present at this meeting and that he, too, heard Spalla make these comments.

FEBC commenced this action on June 30, 1992, requesting declaratory judgment and an award of damages for the alleged violation

of Minn.Stat. § 16B.24, subd. 6(c). The district court denied the State's summary judgment motion, finding that genuine issues of material fact existed with regard to discretionary function immunity, official immunity, and application of the public duty doctrine. In addition, the district court recognized a private cause of action for violation of the statute, found that FEBC had standing, and determined that FEBC's claims were not barred by laches.

## ISSUE

Does Minn.Stat. § 16B.24, subd. 6(c) (1992) create a private cause of action?

## ANALYSIS

In addition to an appeal as of right on the immunity issues, the State seeks discretionary review of several issues. We accept the State's application for discretionary review on the issues of whether FEBC's suit is barred by the public duty doctrine; whether Minn.Stat. § 16B.24, subd. 6(c) (1992) creates a private cause of action; whether FEBC has standing; and whether the action is barred by the doctrine of laches. Because we find the private cause of action issue to be dispositive, we shall address that issue first.

■ Under Minnesota law, the Commissioner of the Department of Administration is given certain directives regarding the leasing of space:

> For needs beyond those which can be accommodated in state-owned buildings, the commissioner shall acquire and utilize space in suitable buildings of historical, architectural, or cultural significance for the purposes of this subdivision unless use of that space is not feasible, prudent and cost effective compared with available alternatives. Buildings are of historical, architectural, or cultural significance if they are listed on the national register of historic places, designated by a state or county historical society, or designated by a municipal preservation commission.

Minn.Stat. § 16B.24, subd. 6(c) (1992) (the Minnesota preference statute). In directing the Commissioner, when leasing space, to give a preference to historically significant buildings, the Minnesota preference statute echoes an existing federal statute. *See* 40 U.S.C. § 601a(a)(1) (1992) ("[T]he Administrator shall—(1) acquire and utilize space in suitable buildings of historic, architectural, or cultural significance, unless use of such space would not prove feasible and prudent compared with available alternatives.").

The State argues that FEBC cannot seek relief on the basis of the Minnesota preference statute because no private cause of action exists for a violation of Minn.Stat. § 16B.24, subd. 6(c). We agree. "A statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication." *Valtakis v. Putnam,* 504 N.W.2d 264, 266 (Minn.App.1993) (citing *Larson v. Dunn,* 460 N.W.2d 39, 47 n. 4 (Minn.1990)). The statute at issue here contains no explicit language creating a private cause of action.

, FEBC first argues that the Minnesota preference statute implies a private cause of action because the federal statute after which the Minnesota statute is patterned provides a private cause of action. We note, however, that none of the cases FEBC relies on to support this argument specifically deals with whether the federal statute implies a private cause of action.

In particular, FEBC's reliance on *Birmingham Realty Co. v. General Servs. Admin.,* 497 F.Supp. 1377 (N.D.Ala.1980) is misplaced. Although that case involves leasing of space in historically significant buildings, the major issue is whether the buildings involved *are,* in fact, historically significant. *Id.* at 1384–85. *Birmingham* neither discusses nor decides the issue of the existence of a private right of action under the statute.

Since the federal cases cited by FEBC do not address the issue of whether a private cause of action exists under the federal statute, construction of that statute is of minimal assistance to us in interpreting the scope of the Minnesota preference statute. *See Contractors Eng'rs Int'l, Inc. v. United States Dep't of Veterans Affairs,* 947 F.2d 1298 (5th Cir.1991) (concluding disappointed subcontractor lacked standing to challenge government procurement action); *Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d

838 (D.C.Cir.1982) (finding unsuccessful bidder on government procurement contract had standing to sue); *Merriam v. Kunzig,* 476 F.2d 1233 (3rd Cir.1973) (holding unsuccessful bidder for lease of office space to government agency had standing to sue), *cert. denied,* 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973); *Fairplain Dev. Co. v. Freeman,* 512 F.Supp. 201 (N.D.Ill.1981) (denying motion for preliminary injunction because plaintiff failed to show it could meet heavy burden of proof necessary to challenge federal procurement determination); *Tenth St. Bldg. Corp. v. Administrator of Gen. Servs. Admin.,* 387 F.Supp. 727 (W.D.Pa.1975) (stating lessor had standing to sue and district court had jurisdiction over the action).

FEBC also argues that the Minnesota preference statute itself creates an implicit cause of action, and points to the statute's legislative history for support, noting that the legislature sought testimony from private developers concerning some of the economic issues of the statute.

While we agree that the legislative history of the Minnesota preference statute is relevant to a discussion of its purpose, we do not find support for FEBC's arguments in that history. Charles Nelson of the Minnesota Historical Society testified during the committee hearing on the bill that historical buildings needed to be able to adapt to new uses in order to justify their existence. John Manillo, the manager of several historically significant buildings, testified that the bill would affect under-utilized buildings by giving their owners an economic incentive to develop the buildings and the surrounding areas. Don Heffernan, representing the Minnesota Preservation Alliance, testified that the bill would help establish a policy to use many historic properties throughout Minnesota; the state, as the largest tenant, could set policy in this area.

The legislature also discussed the meaning of the words "feasible" and "prudent." Some of the discussion focused on the economics of leasing. The term "cost effective" was added to the language of the bill to reflect this concern.

■ Case law, rather than legislative history, provides the most enlightened guidance in determining whether a private cause of action can be implied under a statute. Factors to be considered are (1) whether the plaintiff belongs to the class for whose benefit the statute was enacted; (2) whether the legislature indicated an intent to create or deny a remedy; and (3) whether implying a remedy would be consistent with the underlying purposes of the legislative enactment. *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), *cited in Counties of Blue Earth v. Minnesota Dept. of Labor and Industry,* 489 N.W.2d 265, 268 (Minn. App.1992).

We conclude that the *Cort* factors are not met here. First, although FEBC derives an incidental benefit as the owner of a historically significant building, we do not believe that FEBC is, in fact, part of a class that was intended to benefit from the statute. Rather, we conclude that the statute was designed to preserve Minnesota's architectural heritage and to benefit the state as a whole by encouraging the use of historically significant buildings. Protecting these buildings, not indirectly benefitting their owners, is the primary purpose. *See Counties of Blue Earth,* 489 N.W.2d at 268 ("Although respondents are beneficiaries of the statute, the benefit enjoyed is indirect.").

The second *Cort* factor seeks an indication that the legislature intended to create or deny a remedy for violation of statutory provisions. We find no such indication in the language of the Minnesota preference statute, which provides no remedies to building owners for the State's non-compliance with the statute. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 570–71, 99 S.Ct. 2479, 2486, 61 L.Ed.2d 82 (1979) (finding no basis to infer a private cause of action from statutory language at issue). Moreover, there is no indication in the legislative history or elsewhere that a private cause of action should be available under the Minnesota preference statute. *See id.* at 571, 99 S.Ct. at 2486 ("[I]mplying a private right of action on the basis of congressional silence is a hazardous enterprise, at best."). Given that the statutory language weighs against implying a private cause of action, the silence of the legislative history on the subject "rein-

forces our decision not to find such a right of action implicit within the section." *Id.*

The third *Cort* factor asks whether implying a remedy would be consistent with the underlying purposes of the statute. We conclude that this factor also has not been met. Legislators voiced concern for fiscal responsibility in the hearings on the Minnesota preference statute. The State is required under the statute and in the exercise of its discretion to consider several factors in determining where to lease needed space, but it should not be required to consider the possibility of litigation because it chose a nonhistorically significant site or, perhaps even more problematical, chose one historically significant site over another. Further, recognition of a private cause of action would very possibly force the State, in an effort to avoid litigation, to consistently choose to lease space in a historical building rather than in a building offering a more "feasible, prudent and cost effective" alternative. We believe that recognizing a private cause of action under Minn.Stat. § 16B.24, subd. 6(c) would impede rather than further the statutory intent. None of the *Cort* factors is satisfied.

■ Because of its similarity to the dispositive issue of whether a private cause of action exists, we also address briefly the doctrine of public duty. Under the public duty doctrine, a duty owed to the public in general may not be the basis of negligence liability, although a duty owed to individual members of the public may be the basis of negligence liability. *Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 804 (Minn. 1979).

■ First, the public duty doctrine is more properly a tort doctrine and thus, arguably, has no application here. *See id.* at 807 ("[The public duty doctrine] is a well-established principle of negligence law applicable to tort actions against individuals as well as governments"). Second, one of the factors in determining whether the public duty doctrine applies is whether a statutory duty has been

created for the protection of a particular class of persons. *Id.* As discussed earlier, the Minnesota preference statute is designed not for the benefit of particular landowners, but rather for the benefit of the general public. Thus, even if respondent were to successfully plead that this is a tort action, the public duty doctrine would bar that action. *See id.,* (finding public duty doctrine barred cause of action, in part, because ordinance in question had not been drafted in favor of a particular class of individuals).

■ Because our determination that Minn. Stat. § 16B.24, subd. 6(c) does not create a private cause of action is dispositive, we do not address the remaining issues raised by the State.[1]

### DECISION

The district court incorrectly recognized a private cause of action under the Minnesota preference statute.

**Reversed.**

---

1. We note that both parties conceded at oral argument that Dana Badgerow was sued in her official capacity. Thus, the doctrine of official immunity would not apply in any event to the facts of this case. *See Elwood v. Rice County,* 423 N.W.2d 671, 677 (Minn.1988) (holding official immunity protects public official only from personal liability).