ALLIANCE FOR METROPOLITAN
STABILITY, et al., Appellants,

Metropolitan Interfaith Council on
Affordable Housing, Appellant,

v.

METROPOLITAN COUNCIL,
Respondent,

City of Eagan, Defendant.

No. A03–457.

Court of Appeals of Minnesota.

Dec. 9, 2003.

Timothy L. Thompson, Ann M. Norton, John Cann, Christine R. Goepfert, St. Paul, MN, for appellants Alliance for Metropolitan Stability, et al.

Justin D. Cummins, Miller–O'Brien, Minneapolis, MN, for appellant Metropolitan Interfaith Council on Affordable Housing.

Charles N. Nauen, William A. Gengler, Lockridge Grindal Nauen PLLP, Minneapolis, MN, and Nils Grossman, David Theisen, St. Paul, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge; TOUSSAINT, Chief Judge; and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellants Alliance for Metropolitan Stability (Alliance), Community Stabilization Project (CSP), and Metropolitan Interfaith Council on Affordable Housing (MICAH) challenge the district court's dismissal of their claims based on lack of standing and lack of a right of action, and the grant of respondent's motion for summary judgment. Appellants argue that (1) the district court misapplied *Stansell v. City of Northfield,* 618 N.W.2d 814 (Minn. App.2001), *review denied* (Minn. Jan. 26, 2001), in ruling that appellants lack standing to sue when standing exists under Minnesota caselaw and where the U.S. Supreme Court recognized organizational standing in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982); (2) the district court misunderstood appellants' action to involve an implied right of action, rather than an express right of action under the Uniform Declaratory Judgments Act and erred in holding both that a declaratory-judgment action requires an underlying cause of action and that appellants lacked a common-law right of action; and (3) the district court erred in granting summary judgment because the respondent acted arbitrarily when it incorporated Livable Communities Act (LCA) goals in its guidelines. Because we conclude that the district court erred in ruling that the appellants lack standing but was correct in its right-of-

action and summary-judgment analyses, we affirm in part and reverse in part.

## FACTS

Appellant organizations argue that respondent Metropolitan Council (Council)[1] violated the Metropolitan Land Use Planning Act (MLUPA), Minn.Stat. § 473.851–.871 (2002), by providing cities with guidelines for complying with MLUPA that understated cities' planning obligations. Appellants asked for a declaration of rights under the MLUPA through the Uniform Declaratory Judgments Act, Minn.Stat. ch. 555 (2002). Appellants Alliance,[2] CSP,[3] and MICAH[4] are organizations engaged in educational and advocacy efforts related to affordable housing in metropolitan area communities.

CSP and Alliance claim that the Council's actions have harmed their missions of promoting more affordable housing and required them to divert staff resources to assist members in obtaining housing and to advocate for changes to the Council's MLUPA practices. CSP argues the Council's actions have harmed its members and clients because the shortage of affordable housing directly relates to increased rent. MICAH claims the Council's actions have impaired its ability to carry out its objectives and have required it to redirect funding of approximately $12,000 toward changing the Council's actions.

MLUPA requires each city in the metropolitan area to produce a comprehensive plan that contains "objectives, policies, standards and programs to guide public and private land use, development, redevelopment and preservation for all [local] lands and waters...." Minn.Stat. § 473.859, subd. 1. A local comprehensive plan includes a required land-use plan showing how the city will provide housing opportunities that meet the city's share of current and projected local and regional affordable housing need. Minn.Stat. § 473.859, subd. 2. MLUPA also requires that each city's plan contain a detailed explanation of how it will actually implement the housing element of its plan. Minn.Stat. § 473.859, subd. 4.

The Council is responsible for providing cities with MLUPA guidelines to assist in the cities' planning for their share of the local and regional need for affordable housing. Minn.Stat. §§ 473.854, .867. These guidelines provide direction by assisting cities in assessing housing supplies, analyzing housing needs and goals, and devising implementation plans. After the local governmental unit creates its comprehensive plan, it must submit it to the

1. The Council is a public corporation and a political subdivision of the State of Minnesota. Minn.Stat. § 473.123, subd. 1 (2002).

2. Alliance is a grass-roots coalition of religious, environmental, and social justice organizations who together advocate for Twin Cities reform in land-use, housing, transportation, economic development, and environmental policies. Alliance promotes a comprehensive approach to regional problems through public education, capacity building in local communities, and advocacy for public policy change.

3. CSP is a nonprofit organization based in St. Paul, serving clients and members throughout the metropolitan area. Its mission is to foster and preserve affordable rental housing for its clients and members, particularly people of color. CSP's activities include helping low-income people find affordable housing in the metropolitan area.

4. MICAH is a nonprofit organization based in Minneapolis, whose members are congregations and housing organizations drawn from a broad range of faith communities in the Twin Cities. MICAH works for the creation of more affordable housing through public education, advocacy, and local community organization.

Council for review. Minn.Stat. § 473.858, subd. 3. The Council may require modifications of the comprehensive plan when the plan does not conform to the Council's "metropolitan system plans." Minn.Stat. § 473.175, subd. 1 (2002). However, housing is not specifically defined as a metropolitan system under the MLUPA.

Although the MLUPA refers to local and regional "needs," the term "needs" is neither defined in the MLUPA or in any other provision of Minn.Stat. ch. 473 (2002), nor is there specification as to how or by whom "local and regional housing needs" should be determined or measured. But following the enactment of the MLUPA, the Council developed formulas to assess the need for low- and moderate-income housing on a regional and local basis. Beginning in the late 1970s, based on that formula, the Council calculated affordable housing needs for each community and issued guidelines for local governments to follow to create affordable housing opportunities. By the early 1980s, cities began producing housing elements as part of their comprehensive plans with designations to meet the targets provided by the Council. During the mid-1980s and 1990s, the Council changed its policy and began to exclude any references to affordable housing in its guidelines. Appellants believe that, as a result of this shift, city development in the 1980s and early 1990s lacked the necessary, designated parcels for affordable housing.

In the 1990s, the Minnesota Legislature entered the debate. In 1993, S.F. 449 was introduced in the Minnesota Senate, which would have both mandated the Council to require local governmental units to modify comprehensive plans "inconsistent" with all adopted plans of the Council and created a private right to sue under the MLUPA. But the bill died in committee. In addition, two amendments were vetoed in 1993 and 1994 that would have required the Council to analyze the need for affordable housing in the area, allocate the need to all metropolitan area cities and towns on a "fair-share basis," and adopt and execute a plan to "facilitate, coordinate, and, ... cause the development" of affordable housing wherever the need was not totally satisfied. H.F. 671, 78th Leg., § 1, subd. 3(1), (2) & (7) (Minn.1993). Then, in 1995, the legislature enacted the LCA, which allows cities to negotiate affordable-housing goals with the Council to become eligible to apply for funding under certain programs. Minn.Stat. §§ 473.25–.255. The negotiated goals under the LCA must be "consistent with and promote the policies of the metropolitan council as provided in the adopted metropolitan development guide." Minn.Stat. § 473.254, subd. 2. The legislature, also in 1995, amended the MLUPA to require all cities to update their comprehensive plans, including housing provisions, by the end of 1998. Minn. Stat. § 473.864, subd. 2.

Appellants contend that the Council failed to comply with the current MLUPA mandate by directing cities to develop land-use plans that provide for far fewer affordable-housing units than are needed. They claim that, in implementing the LCA, the Council defined LCA affordable-housing goals so that they were not based on nor related to the affordable-housing "need" referenced in the MLUPA. Appellants point to the fact that the Council stated in 1999 that 115,000 lower-income households will need affordable housing by 2010, yet the directive created by the Council will create no more than 12,885 units. Appellants further argue that the Council's actions have caused cities to disregard the housing provisions of the MLUPA, resulting in the reduction of the num-

ber of acres of land that cities have set aside for affordable housing.

The guidelines at issue are contained in the Council's Local Planning Handbook. The Council contends that there is no conflict between its interpretation of the LCA and the MLUPA requirements. The council believes that it made it clear that, when using the guidelines, the MLUPA requirements have not been ignored:

> A community's Housing Action Plan developed under Livable Communities Act criteria may meet the requirements for the housing implementation program required by statute, if it includes adequate programs, fiscal devices and other official controls to meet the community's goals, as required by the [MLUPA] (see Minn. Stat. sec. 473.859, subd. 2, last sentence).

1997 Local Planning Handbook 51.

Appellants together sought declaratory and injunctive relief. The Council moved to dismiss, or in the alternative, for summary judgment. The district court granted Council's motion to dismiss and held that, as to appellants' claims against the Council (1) appellants lack standing, (2) the MLUPA does not provide an implied right of action, (3) the usual common-law right of judicial review of agency action does not apply, and (4) relief under the Uniform Declaratory Judgments Act is not available absent an independent cause of action. The court also impliedly granted Council's motion for summary judgment, finding that the Council "acted within its legal authority and not in an arbitrary or capricious manner." This appeal follows.[5]

**5.** Appellants appeal only as to the Council and not the City of Eagan. The City of Eagan also moved to dismiss and for summary judg-

## ISSUES

I. Did the district court err in dismissing appellants' claim for lack of standing?

II. Did the district court err in dismissing appellants' claim for lack of a right of action?

III. Did the district court err in granting the Council's motion for summary judgment?

## ANALYSIS

■■■■ On appeal from a district court's dismissal for failure to state a claim on which relief can be granted, this court reviews de novo the legal sufficiency of the claims presented. *Barton v. Moore,* 558 N.W.2d 746, 749 (Minn.1997); *Leonard v. Northwest Airlines, Inc.,* 605 N.W.2d 425, 428 (Minn.App.2000), *review denied* (Minn. Apr. 18, 2000). "[T]he only question before [the reviewing court] is whether the complaint sets forth a legally sufficient claim for relief." *Barton,* 558 N.W.2d at 749. Dismissals are generally disfavored; therefore, a reviewing court should not uphold a dismissal if it is possible on any evidence that might be produced to grant the relief requested. *Jacobson v. Bd. of Trs. of the Teachers Ret. Ass'n,* 627 N.W.2d 106, 109 (Minn.App.2001), *review denied* (Minn. Aug. 15, 2001). The court is to presume that all of the alleged facts are true for purposes of deciding the motion. *Abbariao v. Hamline Univ. Sch. of Law,* 258 N.W.2d 108, 111 (Minn.1977); *In re Milk Indirect Purchaser Antitrust Litig.,* 588 N.W.2d 772, 775 (Minn.App.1999). "All assumptions and inferences must favor the party against whom the [motion] is sought." *St. James Capital Corp. v. Pallet Recycling Assocs. of N. Am., Inc.,* 589 N.W.2d 511, 514 (Minn.App.1999).

ment in the district court, and both motions were granted.

## I.

Appellants argue that the district court erred in granting the Council's motion to dismiss for lack of standing.[6] "Standing is the requirement that a party has a sufficient stake in a justiciable controversy to seek relief from a court." *State v. Philip Morris, Inc.,* 551 N.W.2d 490, 493 (Minn.1996) (citing *Sierra Club v. Morton,* 405 U.S. 727, 731–32, 92 S.Ct. 1361, 1364–65, 31 L.Ed.2d 636 (1972)). A party has standing if (1) the legislature has conferred standing by statute, or (2) a party has suffered "injury-in-fact." *Nash v. Wollan,* 656 N.W.2d 585, 588 (Minn.App. 2003), *review denied* (Minn. Apr. 29, 2003). A party questioning a statute must show that it is at some disadvantage, has an injury, or an imminent problem. *Lee v. Delmont,* 228 Minn. 101, 111, 36 N.W.2d 530, 537 (1949). The Minnesota Supreme Court has adopted a liberal standard for organizational standing. *See Snyder's Drug Stores, Inc. v. Minn. State Bd. of Pharmacy,* 301 Minn. 28, 35, 221 N.W.2d 162, 166 (1974) (granting standing to nonprofit consumer-advocate corporation based solely on allegations of economic injury-in-fact to the corporation's members because without the corporation's intervention "no one representing the consuming public has any part in the lawsuit").

To satisfy the "injury-in-fact" requirement, appellants must demonstrate that they have suffered actual, concrete injuries caused[7] by the challenged conduct. *In re Improvement of County Ditch No. 86,* 614 N.W.2d 756, 762 (Minn.App. 2000), *rev'd on other grounds,* 625 N.W.2d 813 (Minn.2001). Appellants must have a direct interest in the statute that is different in character from the interest of citizens in general. *In re Jury Panel,* 276 Minn. 503, 506, 150 N.W.2d 863, 866 (1967); *Arens v. Village of Rogers,* 240 Minn. 386, 390, 61 N.W.2d 508, 512 (1953). Here, the complaint states that the inadequate supply of and inadequate planning for affordable rental housing resulting from Council policies has injured each of the appellants. More specifically, Alliance claims that the Council's failure to properly implement the MLUPA has injured it by substantially interfering with its mission by compelling the organization to di-

---

**6.** The parties dispute whether the standing issue arose in the context of a motion for summary judgment or a motion to dismiss or for judgment on the pleadings because additional affidavits were submitted by appellants. It appears that the district court relied only on the pleadings to support its finding. According to *Osborn v. United States,* 918 F.2d 724, 729 (8th Cir.1990), the submission of affidavits in support of standing should not convert the motion to summary judgment, and therefore raise the bar of appellants' proof obligations at such an early stage of the case. Therefore, the standing issue is analyzed here in the context of a motion to dismiss or for judgment on the pleadings.

**7.** Here, appellants' injuries stem from the cities' failure to provide for sufficient affordable housing. Appellants contend that the cities' actions are directly related to the Council's guidelines because the guidelines encourage the cities to ignore their affordable-housing statutory obligations, thereby satisfying any causation requirement. This is supported through affidavit testimony which states that (1) the Council's MLUPA guidelines contributed to dramatically lower affordable housing production; (2) as a result of Council guidelines, many cities now disregard MLUPA or no longer believe it to be in effect; (3) Council guidelines that demanded more from cities would lead to more affordable housing development; and (4) the Council's failure to provide guidelines in compliance with MLUPA has both resulted in the production of fewer affordable units and has set in place a process that will exacerbate the housing crisis into the future. Because the causal link between the Council's actions and the organizations' injuries is evidenced in both the complaint and in the supporting affidavits, sufficient causation has been established to pass the dismissal stage.

vert resources from activities it would otherwise undertake, making it more difficult to educate community members and local governments about their obligations, and hampering its advocacy efforts. CSP claims that the Council has harmed its mission of promoting more affordable housing and has required it to divert staff resources. The executive director of CSP states that the CSP's work has become extremely difficult because of the shortage of affordable housing, which has resulted largely from the lack of affordable housing development. According to the CSP executive director, this shortage has directly harmed low-income people, especially minority families, who represent many of the CSP's clients and members. MICAH claims the Council's actions have impaired its ability to work for the creation of an adequate supply of affordable housing, to address disparities in housing, and to further fair housing through public education, advocacy, and organizing activities. MICAH's executive director states that the Council's conduct has forced the organization to shift its focus and redirect approximately $12,000 in staff time to outreach, education, and organizing concerning the Council's guidelines. She also testified as to specific members of MICAH who have been harmed by the resulting lack of affordable housing.

■ The Council responds that the appellants' statements are generalizations and conclusory in nature. The district court agreed, relying on *Stansell,* 618 N.W.2d at 818. But *Stansell* is distinguishable from this case. In *Stansell,* the plaintiffs stated generally that they had "been injured," *see id.,* whereas here all three organizations have alleged both that their resources have been diverted and that their educational, advocacy, and placement efforts are impeded by the Council's understating of housing duties. Further,

appellant organizations are different from the general public because the general public does not have a mission to educate and advocate for affordable housing. The fact that affordable housing affects many individuals and communities does not alone make the issues generalized. *See Fed. Election Comm'n v. Akins,* 524 U.S. 11, 24–25, 118 S.Ct. 1777, 1786, 141 L.Ed.2d 10 (1998) (determining that a group of voters suffered an injury when the FEC refused to require another organization to register as a political action committee and file reports, and noting that a harm (the denial of information), though widely shared, can still be sufficiently concrete and specific, and constitute injury-in-fact).

Minnesota courts recognize impediments to an organization's activities and mission as an injury sufficient for standing. *See Snyder's Drug Stores,* 301 Minn. at 35, 221 N.W.2d at 167. Further, the U.S. Supreme Court held that a housing organization with a mission of promoting fair housing suffered a cognizable injury as a result of racial steering practices that frustrated its counseling and referral practices, with a consequent drain on its resources. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982) (noting that the allegations constituted "far more than simply a setback to the organization's abstract social interests"). Based on the complaint and the supporting affidavits, we conclude that the appellants have suffered injuries-in-fact and have interests in the MLUPA statute that are different in character from the interests of citizens in general. Therefore, the district court erred in holding that the appellants did not have standing.

■ Our determination is supported by the well-established notion of associational or organizational standing, which recognizes that an organization may sue to redress injuries on its own behalf or on

behalf of its members. *Philip Morris,* 551 N.W.2d at 497–98. Where an organization attempts to claim an interest in a statute, there are two key questions to ask to determine if organizational standing is more likely: (1) if these organizations were denied standing, would that mean that no potential plaintiff would have standing to challenge the regulation in question? and (2) for whose benefit was the regulation at issue enacted? *Snyder's Drug Stores,* 301 Minn. at 33, 221 N.W.2d at 165. Here, it is very unlikely that a city will choose to sue for stricter regulations. As the record indicates, using LCA goals creates less of a demand on the cities to provide for affordable-housing units. Suing to force the Council to use need-based goals will only result in having to increase the amount of affordable-housing units within their city limits. Further, the regulation was enacted to benefit low- and moderate-income home-seekers. These beneficiaries are both members of the appellant organizations and the people that the organizations represent. Therefore, utilizing the *Snyder's Drug Stores'* questions in our analysis, we conclude that appellants have standing.

## II.

■■■■ The appellant organizations also argue that the district court erred in granting the Council's motion to dismiss for lack of a cause of action because they believe that they have an express cause of action under the Uniform Declaratory Judgments Act.[8] The Uniform Declaratory Judgments Act provides that "[a]ny person ... whose rights, status, or other legal relations are affected by a statute" may obtain a declaration as to those rights, status, or legal relations and as to any question of construction or validity of the statute. Minn.Stat. § 555.02 (2002). A party may seek a declaration as to rights, status or legal relations whenever the declaration will terminate a controversy or remove an uncertainty. Minn.Stat. § 555.05 (2002). A declaratory judgment may be entered regardless of whether "further relief is or could be claimed," and it will lie when "legal relations are affected by a statute, municipal ordinance, contract, or franchise." Minn.Stat. §§ 555.01, .02 (2002). The purpose of the statute is to settle uncertainty and it is to be liberally construed and administered. Minn.Stat. § 555.12 (2002). However, "[p]rinciples of judicial restraint preclude [courts] from creating a new statutory cause of action that does not exist at common law where the legislature has not either by [a] statute's express terms or by implication provided for ... liability." *Bruegger v. Faribault County Sheriff's Dep't,* 497 N.W.2d 260, 262 (Minn.1993). "A statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication." *Valtakis v. Putnam,* 504 N.W.2d 264, 266 (Minn.App.1993) (citing *Larson v. Dunn,* 460 N.W.2d 39, 47 n. 4 (Minn.1990)).

■■■■ Appellants seek a proper construction of the MLUPA under section 555.02 and a declaratory judgment that the MLUPA does not permit the Council to adopt guidelines that advise cities to substitute lesser housing goals in place of the MLUPA's requirement of each city's share of local- and regional-housing need. The Uniform Declaratory Judgments Act, however, is not an express independent source of jurisdiction. *See Brown v. State,* 617 N.W.2d 421, 425 (Minn.App.2000), *review denied* (Minn. Nov. 21, 2000), *cert. denied,*

---

**8.** Appellants do not assert a right of action under the MLUPA because there is no private right of action under MLUPA.

532 U.S. 995, 121 S.Ct. 1655, 149 L.Ed.2d 638 (2001); *Vrieze v. New Century Homes, Inc.*, 542 N.W.2d 62, 67 (Minn.App.1996). A party seeking a declaratory judgment must have an independent, underlying cause of action based on a common-law or statutory right. *See Brown*, 617 N.W.2d at 425; *Vrieze*, 542 N.W.2d at 67. There is no private right to enforce the MLUPA, and the Uniform Declaratory Judgments Act cannot create a cause of action that does not otherwise exist. While we acknowledge that this leaves appellants' cause without appropriate avenues for review, the statute limits the review procedures. We recognize that appellants' energy and resources are directly affected by the interpretation and application of the MLUPA and the LCA. Appellants raise a legitimate issue as to what actions the Council must take in creating their guidelines. But the only way for this court to be able to review appellants' cause as stated is for the MLUPA to be amended to allow for a cause of action. Without such amendment, this court's hands are tied.

■ We also conclude a private cause of action is not implied through the MLUPA. In determining whether a private cause of action is implied, we consider three factors: (1) whether the appellants belong to a special class of persons for whose benefit the statute was enacted, (2) whether the legislature indicated an intent to create or deny a private remedy, and (3) whether inferring a private remedy would be consistent with the underlying purpose of the legislation. *Flour Exchange Bldg. Corp. v. State*, 524 N.W.2d 496, 499 (Minn. App.1994), *review denied* (Minn. Feb. 14, 1995).

The Council argues that appellants do not belong to the special class of persons because, when a statute is phrased as a directive to an agency, "[t]here [is] far less reason to infer a private remedy in favor of individual persons." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690–91, 99 S.Ct. 1946, 1954–55, 60 L.Ed.2d 560 (1979); *see also Alexander v. Sandoval*, 532 U.S. 275, 289, 121 S.Ct. 1511, 1521, 149 L.Ed.2d 517 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." (quotation omitted)). Here, Minn. Stat. § 473.854 (2002) provides

[t]he council shall prepare and adopt guidelines and procedures relating to the requirements and provisions of sections 462.355, subdivision 4, 473.175, and 473.851 to 473.871 which will provide assistance to local governmental units and school districts in accomplishing the provisions of sections 462.355, subdivision 4, 473.175, and 473.851 to 473.871.

We agree that this provision states a duty-creating directive to the Council.

■ Further, it does not appear that there was legislative intent to create a private cause of action. Without statutory intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander*, 532 U.S. at 286–87, 121 S.Ct. at 1520. The plain language of the statute does not indicate a private cause of action was intended. Minn.Stat. § 473.866 (2002), entitled "Contested Cases; Administrative and Judicial Review," states only that the Council's decision to require modification may be contested by the affected local governmental unit. It does not mention a private cause of action, and it does not indicate intent to broaden reviewability by other actors or for other causes. In addition, when the legislature creates a remedial scheme for enforcement, as it did here, it indicates intent to exclude private enforcement. *See, e.g., Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 532 (Minn.

1992); *Flour Exch. Bldg.*, 524 N.W.2d at 499–500 (stating that "[t]he silence of the legislative history on the subject reinforces our decision not to find such a right of action implicit within the section." (quotation omitted)).

The final *Flour Exchange Bldg.* factor is whether inferring a private remedy would be consistent with the underlying purpose of the MLUPA. One of the MLUPA's purposes is to consolidate and coordinate planning in the metropolitan area. *See* Minn.Stat. § 473.851 (2002). The Council argues creating a private right of action would have a negative effect on the MLUPA's purpose. *See Nordmarken v. City of Richfield,* 641 N.W.2d 343, 349 (Minn.App.2002) (noting local regulation by referendum would encroach on the uniform procedural laws for land-use planning established by the legislature and would undermine the comprehensive and uniform nature of the statutory process), *review denied* (Minn. June 18, 2002). Appellants argue, on the other hand, that judicial review of the Council's actions is necessary to restore the accountability and the coordinated metropolitan planning from which the MLUPA's purpose arose.

While it seems unclear whether creating a private right of action would frustrate the MLUPA's purpose, the statute is written as a directive. Therefore, there is no presumption of intent to confer rights on a particular class of persons. Because it also appears the legislature did not intend to imply a right of action, we conclude that there is no implied right of action under the MLUPA.

 Finally, we look at whether appellants have a common-law right to judicial review. There is a presumption that persons injured may seek judicial review of agency decisions in the absence of statutory language to the contrary. *Minn. Pub. Interest Research Group v. Minn.*

*Envtl. Quality Council,* 306 Minn. 370, 376, 237 N.W.2d 375, 379 (1975). In *Minn. Pub. Interest Research Group,* the court stated that

> [g]iven an agency obligation to carry out the substantive requirements of the Act, we believe that courts have an obligation to review substantive agency decisions on the merits.... [A]bsent legislative guidance as to reviewability, an administrative determination affecting legal rights is reviewable unless some special reason appears for not reviewing.

*Id.* at 379, 237 N.W.2d at 381 (quotation omitted). Here, we have a Council writing guidelines that assist cities with their affordable-housing planning. Because an administrative determination was never made, we do not have a substantive agency decision to review. Therefore, we conclude the presumption of reviewability does not apply here, and appellants do not have a common-law right to judicial review.

 But even if the presumption did apply, the presumption would be set aside because of a showing of "clear and convincing evidence" of a contrary legislative intent. *See id.* at 377, 237 N.W.2d at 380 (stating "[o]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review" (quotation omitted)). While legislative silence is evidence that the legislature did not intend to override the presumption in favor of judicial review, the "presumption favoring judicial review [is] overcome, whenever the [legislative] intent to preclude judicial review is fairly discernible in the statutory scheme." *Block v. Cmty. Nutrition Inst.,* 467 U.S. 340, 351, 104 S.Ct. 2450, 2456, 81 L.Ed.2d 270 (1984) (quotation omitted).

> [W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of partic-

ular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded. In a complex [statutory] scheme . . ., the omission of such a provision [for consumer enforcement] is sufficient reason to believe that Congress intended to foreclose consumer participation in the regulatory process.

*Id.* at 349, 104 S.Ct. at 2456; *see also Minn. Pub. Interest Research Group,* 306 Minn. at 377–78, 237 N.W.2d at 380.

Minn.Stat. § 473.866 provides a procedure for an affected governmental unit to challenge a specific Council decision under the MLUPA. Section 473.866 says nothing about private challenges to Council actions other than those requiring cities to alter their comprehensive plans. This provision provides "clear and convincing" evidence of intent to limit judicial review. *See Block,* 467 U.S. at 347, 104 S.Ct. at 2454 ("In a complex [statutory] scheme . . ., the omission of such a provision [for consumer enforcement] is sufficient reason to believe that Congress intended to foreclose consumer participation in the regulatory process."); *Semrad,* 493 N.W.2d at 532 (noting that the legislature "expressly grant[ed] enforcement powers to the commissioner of commerce alone and that, while the legislature was aware of the method by which it could create a private right of action, it did not do so"). Because a presumption of reviewability would be rebutted by clear and convincing evidence of legislative intent to not allow reviewability by a private actor, appellants would not

have a common-law right to judicial review even if the presumption did apply.

We conclude that appellants neither have an express, an implied, nor a common-law right to judicial review. Therefore, the district court's dismissal on these grounds is affirmed.

## III.

The appellant organizations argue the district court erred in granting the Council's motion for summary judgment.[9] On appeal from summary judgment, this court asks whether there are genuine issues of material fact and whether the district courts erred in applying the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990). The reviewing court must view the evidence in a light most favorable to the nonmoving party. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). Any doubts about the existence of a material fact are resolved in the nonmoving party's favor. *Funchess v. Cecil Newman Corp.,* 632 N.W.2d 666, 672 (Minn.2001).

"[T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn.1997). No genuine issue of material fact exists "[w]here the record taken as a

---

9. The court did not expressly grant or deny the Council's motion for summary judgment in its order. Instead, it acknowledged that the issue need not be reached in light of its other rulings, gave a cursory discussion of Council's argument, and found that the Council "acted within its legal authority and not in an arbitrary or capricious manner." Appellants raise the issue that it is unclear whether the district court actually granted summary judgment. The order states that the memorandum "is part of [the] Order and constitutes the Court's findings of fact and conclusions of law to the extent required by Minn. R. Civ. P. 52.02." While the court did not expressly grant the Council's motion for summary judgment, it concluded that the Council did not act in an arbitrary or capricious manner, thereby ruling on the summary-judgment issue.

whole could not lead a rational trier of fact to find for the nonmoving party." *Id.* at 69 (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "[T]he party resisting summary judgment must do more than rest on mere averments." *Id.* at 71. A genuine issue for trial must be established by substantial evidence. *Id.* at 69–70.

■ Appellants argue that the Council acted arbitrarily and capriciously by adopting guidelines based in part on affordable housing LCA "goals," rather than basing them on affordable housing "needs." They assert that, because the effect of using "goals" instead of "needs" creates a huge housing disparity, the Council's change in policy to use "goals" is unreasonable. The Council states that its justification for making the policy change was that diminished federal funding for low-income housing limits cities' abilities to produce affordable housing. Further, the Council states it is simply responding to the enactment of the LCA. Therefore, using negotiated "goals" rather than actual "need" is reasonable. Appellants contend that there are material fact issues surrounding the reasonableness of the Council's actions and that summary judgment is improper at this stage because they need more time for additional discovery on this issue.

■ Appellants' memorandum in opposition to defendants' motions submitted to the district court contains a one-line reference to the need for additional discovery. While they did not formally move the court for additional time or discovery, they did file a Minn. R. Civ. P. 56.06 affidavit stating they needed further factual development on the above issue. The district court did not explicitly rule on the motion, but it implicitly denied the motion by granting the Council's motion for summary judgment.

■ A district court's decision to deny a motion for a continuance to conduct discovery is reviewed under an abuse-of-discretion standard. *Cherne Contracting Corp. v. Wausau Ins. Cos.,* 572 N.W.2d 339, 346 (Minn.App.1997), *review denied* (Minn. Feb. 19, 1998). A transcript was not provided; therefore review is limited to whether the findings support the district court's conclusions of law. *Bormann v. Bormann,* 644 N.W.2d 478, 481 (Minn. App.2002). Generally, continuances should be liberally granted, particularly if the party seeking a continuance had insufficient time to complete discovery. *Rice v. Perl,* 320 N.W.2d 407, 412 (Minn.1982). In deciding whether such a continuance should be granted, the district court must address two issues: (1) whether the plaintiff has been diligent in obtaining or seeking discovery prior to its rule 56.06 motion, and (2) whether the plaintiff is seeking further discovery in the good faith belief that material facts will be uncovered or merely engaging in a fishing expedition. *Id.*

Here, appellants never made formal discovery requests. Instead, in their rule 56.06 affidavit, they stated that they needed the "full record" from which the Council justifies its actions. This is a rather general and broad request. A rule 56.06 affidavit must be specific about the evidence expected, the source of discovery necessary to obtain the evidence, and the reasons for the failure to complete discovery to date. *See Vosbeck v. Lerdall,* 245 Minn. 164, 167, 72 N.W.2d 371, 374 (1955). The district court here had considerable documentary evidence and affidavits upon which to base its decision. *See McCormick v. Custom Pools, Inc.,* 376 N.W.2d 471, 477 (Minn.App.1985), *review denied* (Minn. Dec. 30, 1985) (stating summary-

judgment grant before completion of discovery was not premature where additional discovery would have neither aided the district court in determining whether material fact issues existed nor changed the result of the summary-judgment motion). On this record, we conclude that the district court did not abuse its discretion in implicitly denying appellants' request for additional discovery.

As to the material issues of fact, the record reflects that the term "need" is undefined in the statute. When enacted, the Council created formulas to help determine what each city's "need" was. Over time, the Council adjusted the formulas to better serve their purpose. Then, after the LCA was enacted, the Council decided to change its policy and stop using "need" formulas, and to start using goal-based guidelines consistent with the LCA.

■■■ Governmental bodies have broad discretion, and the courts will not interfere with the decision if there is a rational basis for it, even if the decision is debatable. *Larson v. Wash. County*, 387 N.W.2d 902, 905 (Minn.App.1986), *review denied* (Minn. Aug. 20, 1986). When considering decisions of a governmental unit involving judgment and discretion, the court will not substitute its judgment for that of the governmental unit. *City of New Brighton v. Metro. Council*, 306 Minn. 425, 430, 237 N.W.2d 620, 624 (1975). If the reasonableness of the action of the governmental unit is "at least doubtful, or fairly debatable," the court will uphold the action. *Miller v. Foley*, 317 N.W.2d 710, 714 (Minn.1982) (quoting *Arcadia Dev. Corp. v. City of Bloomington*, 267 Minn. 221, 226, 125 N.W.2d 846, 850 (1964)). Because the term "need" was never defined in the MLUPA, it is reasonable for the Council to react to the new LCA legislation and to enhance its guidelines to reflect what it believes to be the plain meaning of

the MLUPA and the LCA and the legislative intent behind both statutes. Because the policy decision involves judgment and discretion, we will not interfere with the Council's decision. Therefore, there are no genuine issues of material fact in dispute.

■■■ The final question in the summary-judgment analysis is whether the district court erred in applying the law. *State by Cooper*, 460 N.W.2d at 4. An agency action is subject to review as to whether the action "was not mistaken as to the applicable law," as well as to whether the agency acted "arbitrarily, oppressively, or unreasonably." *City of New Brighton*, 237 N.W.2d at 624. The MLUPA requires the Council to "prepare and adopt guidelines and procedures relating to the requirements and provisions of sections 462.355, subdivision 4, 473.175, and 473.851 to 473.871 which will provide assistance to local governmental units and school districts in accomplishing the provisions of sections 462.355, subdivision 4, 473.175, and 473.851 to 473.871." Minn.Stat. § 473.854. The MLUPA requires *cities'* comprehensive plans to contain "a housing element containing standards, plans and programs for providing adequate housing opportunities to meet existing and projected local and regional housing *needs.*" Minn.Stat. § 473.859, subd. 2(c) (2002) (emphasis added). It also must contain a "housing implementation program, . . . which will provide sufficient existing and new housing to meet the local unit's *share* of the metropolitan area *need* for low and moderate income housing." *Id.*, subd. 4(3) (emphasis added). The LCA requires the Council to negotiate goals "that are consistent with and promote the policies of the metropolitan council as provided in the adopted metropolitan development guide." Minn.Stat. § 473.254, subd. 2.

Appellants contend that the Council acts unlawfully when it provides guidelines based on a city's LCA goals rather than the city's share of local and regional housing need. But because "guidelines" and "assistance" are not defined terms, they are left to the Council's discretion. *See Minn. Pub. Interest Research Group*, 306 Minn. at 382, 237 N.W.2d at 382 (noting when term is not defined, the implication is that the legislature intended that the interpretation of that term be within the regulated agency's discretion). The Council has met its required duties under the statute by preparing and adopting a Local Planning Handbook that includes guidelines providing assistance to cities in satisfying the cities' affordable-housing obligations. The MLUPA does not indicate who or what entity is to determine "need" and "share," but the terms appear in the cities' responsibilities' provisions, not the Council's. Further, as the MLUPA reads currently, the Council does not have the power to compel or guarantee that cities will adopt official controls to implement housing plans that satisfy the MLUPA. *See* Minn.Stat. § 473.175, subd. 1 (2002) (stating the Council only has the authority to require modifications when a local comprehensive plan does not conform with the Council's "metropolitan system plans"). Therefore, it appears the Council is not the implementing entity here; it is the city's responsibility to address the "need" for low- and moderate-income housing.

Because the MLUPA does not explicitly or implicitly state that the Council must address regional need in its guidelines, because calculating "need" is discretionary, and because the Council fulfilled its guideline responsibilities, the Council did not violate the MLUPA when it changed its policy. We conclude that there are no genuine issues of material fact and that the district court did not err in applying the law. Therefore, summary judgment is affirmed.

### DECISION

The district court erred in holding that the appellants do not have standing. The district court did not err in holding that the appellants lack a cause of action, have no genuine issues of material fact, and are not entitled to judgment as a matter of law.

**Affirmed in part and reversed in part.**